IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


| | | |
|---|---|---|
| RONAN MCCABE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION FILE |
| v. | ) | |
| | ) | NUMBER 1:12-cv-2494-TCB |
| DAIMLER AG and | ) | |
| MERCEDES-BENZ USA, LLC, | ) | |
| | ) | |
| Defendants. | ) | |


## O R D E R

This case comes before the Court on Defendants' motions to dismiss [16 & 31] and motions to strike the class allegations from the first amended complaint [17 & 32].


## I.   Background

This is a putative class action brought by residents of Georgia, Texas, Virginia, Florida, Illinois and California based on alleged defects in the fuel systems of 2003-2009 model year W211 E-Class Mercedes-Benz vehicles. Defendant Daimler AG, a German corporation, manufactured the vehicles.

Defendant Mercedes-Benz USA ("MBUSA"), a New Jersey limited liability company and a subsidiary of Daimler, distributed the vehicles within the United States.

Plaintiffs filed their original complaint on July 18, 2012.  On August 28, they filed their first amended complaint, which is the operative pleading in this case.  On September 24, MBUSA filed its motion to dismiss [16] and its motion to strike the class allegations in the amended complaint [17].  On November 7, Daimler filed its own motions to dismiss [31] and to strike the class allegations in the amended complaint [32].  In those motions, Daimler joins the arguments made by MBUSA and adds arguments that are specific to Daimler.  In the discussion below, the Court will address Defendants' arguments together except where it is necessary to address Daimler's arguments separately.

The facts below are taken from Plaintiffs' amended complaint and those exhibits to the original complaint that Plaintiffs have incorporated into their amended complaint.[1]  These facts are accepted as true for purposes of Defendants' motions to dismiss.

---

[1] Plaintiffs have also asked the Court to take judicial notice of another recall issued by MBUSA [40], as well as an investigation by the Nation Highway Traffic Safety Administration [44].  However, even assuming such matters are an appropriate subject for judicial notice, the Court finds them irrelevant to the issues before it.

### A.    General Allegations

The vehicles in question were accompanied by MBUSA's new vehicle limited warranty ("NVLW"), which provides as follows:

> DEFECTS: Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes-Benz vehicle that any authorized Mercedes-Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period.[2]

It further provides that the warranty period begins when the vehicle is delivered to the first retail purchaser or put into service as a demonstrator vehicle by an authorized dealer, and the warranty period ends after four years or 50,000 miles, whichever occurs first.

The vehicles in question have defects in or around the evaporation tubes in their gasoline tanks, making them prone to leak gasoline that pools on top of their fuel sending units.  As a result, owners have experienced the emission of gasoline fumes into their vehicle cabins, the pooling of gasoline underneath their vehicles, and the soaking of their rear seats with gasoline.

---

[2] This language comes from MBUSA's factory warranty for 2009 model year vehicles; however, the warranties for the other model years at issue in this case contained similar provisions.

3

Uncontained gasoline poses serious health risks.  For example, the Illinois Department of Public Health has published the following advisory on its website:

> Breathing small amounts of gasoline vapors can lead to nose and throat irritation, headaches, dizziness, nausea, vomiting, confusion and breathing difficulties.  Symptoms from swallowing small amounts of gasoline include mouth, throat and stomach irritation, nausea, vomiting, dizziness and headaches.  Some effects of skin contact with gasoline include rashes, redness and swelling.  Being exposed to large amounts of gasoline can lead to coma or death.

Uncontained gasoline also poses serious safety risks due to the danger of fire or explosion.  The risks are enhanced by the fact that cigarettes are a potential ignition source, and the vehicles in question were designed with cigarette lighters and ashtrays.

In 2008, MBUSA initiated a voluntary recall campaign to fix the issue of leaking gasoline in its 2003-2006 model year E-Class vehicles.  Pursuant to the recall, MBUSA's authorized dealers inspected and replaced fuel filter modules in those vehicles.  However, Defendants either misdiagnosed the source of the leaks or chose to conceal the actual source in order to avoid more expensive repairs, and owners have continued to experience leaks after having their fuel filters replaced.

Despite customer complaints, Defendants refused to perform additional repairs on vehicles subject to the recall unless those vehicles were still under warranty.  Moreover, MBUSA never issued a pertinent recall for the other model years at issue in this case.

Because Defendants have failed to fix the problem through a recall campaign, many owners whose vehicles are no longer under warranty have been forced to purchase replacement gasoline tanks and other fuel system components.  However, even those replacement parts have failed to fix the problem.  Similarly, owners who have had fuel system components replaced pursuant to their factory warranties have continued to experience fuel leaks with those replacement parts.

Defendants were aware of the defect at least as early as 2008, when they issued the recall, but they failed to re-engineer the parts at issue and continued to sell vehicles with the defect through the 2009 model year.  In addition, Defendants did not disclose the defect to their consumers.

B.    Named Plaintiffs' Allegations

Plaintiff Ronan McCabe is a resident of Georgia who purchased a 2006 Mercedes-Benz E55 AMG on January 24, 2012.  The day after his purchase, McCabe noticed a strong gasoline odor emanating from the right

side rear of his vehicle.  When he contacted MBUSA about the issue, he was told that the vehicle was not eligible for repairs under the recall campaign and that he should take it to a Mercedes-Benz service center for diagnosis. On January 26, 2012, he took the vehicle to a service center, where service technicians determined that the fuel leak was coming from the fuel sending unit on the left side of his gasoline tank.  McCabe paid $302.87 to have the fuel sending unit replaced, but about a week later, he noticed that the odor was still there.  On February 6, 2012, he returned to the service center and explained that he was still experiencing a strong fuel odor whenever the gas tank was filled.  After diagnosis, he paid $1,632.25 to have the gas tank, fuel-sending units, fuel pump, rings and seals replaced.  Despite all of these repairs, McCabe continues to experience a strong fuel odor in his vehicle cabin when the gas tank is completely filled.

Plaintiff Randa Herring is a resident of Georgia who purchased a 2006 Mercedes-Benz E500 on April 9, 2009.  On July 29, 2012, she noticed a strong gasoline odor inside her vehicle.  The next day, she took the vehicle to a Mercedes-Benz service center, where service technicians determined that the fuel leak was coming from the gas tank or its related components. The service center offered to replace the necessary components at a cost of

$2,896.64 or to allow Herring to trade in her vehicle at a reduced value to reflect the problem with her fuel system.  Herring elected to trade in her vehicle, and the service center deducted $3,937 from the trade-in value to reflect the problem.

Plaintiff Jon Dustin Stone is a resident of Texas who purchased a 2007 Mercedes-Benz E63 AMG on July 7, 2011.  On January 18, 2012, Stone took his vehicle to a Mercedes-Benz service center, complaining of a fuel odor and fuel leak.  After diagnosis, service technicians replaced his left-side fuel sending unit and installed a new seal on his right-side fuel sending unit.  But just two days later, Stone returned to the service center, still complaining of a strong fuel odor in the cabin of his vehicle.  At that point, service technicians determined that his new fuel sending unit was defective and replaced it with another one.  However, on February 3, 2012, Stone returned to the service center after seeing a liquid fuel leak underneath his vehicle.  This time, service technicians replaced his entire gas tank.  However, Stone continues to experience a strong fuel odor in the cabin of his vehicle if the gas tank is completely filled.

Plaintiff Adam Deuel is a resident of Texas who purchased a 2004 Mercedes-Benz E500 on June 11, 2004.  In August 2012, Deuel noticed a

strong gasoline odor inside his vehicle.  He took the vehicle to a Mercedes-Benz service center and paid $1,042.12 to have the left-side fuel sending unit replaced.  He also had to pay $289 to replace the rear seat, which had been soaked with gasoline and stained.  Despite having his fuel sending unit replaced, Deuel continues to experience a strong fuel odor when his gas tank is completely filled.

Plaintiff Minh Vo is a resident of Virginia who purchased a 2006 Mercedes-Benz E500 on December 15, 2008.  He also purchased a 2005 Mercedes-Benz E55 AMG on December 23, 2010.  Prior to Vo's ownership, the E55 AMG had parts replaced under MBUSA's recall campaign.  But on March 14, 2011, Vo took the vehicle to a Mercedes-Benz service center because he was experiencing a gasoline odor both inside and outside the vehicle.  The service center refused to perform additional work under the recall but replaced one of the vehicle's fuel sending units and two of its seal rings at a cost of $945.28 to Vo.  Despite these repairs, Vo continues to experience a strong fuel odor in the cabin of his E55 AMG whenever the gas tank is completely filled.  He has also experienced similar issues with his E500, but no repairs have been performed on that vehicle yet.

Plaintiff Omar Mattadeen is a resident of Florida who purchased a new 2004 E55 AMG on April 9, 2004.  On March 27, 2008, he took the vehicle to a Mercedes-Benz service center, complaining of a fuel odor.  He was informed that the vehicle was subject to the 2008 recall campaign, and service technicians replaced the fuel filter on his vehicle pursuant to that recall.  However, this did not resolve the issue, and Mattadeen returned to the service center, still complaining of a fuel odor.  The service center refused to perform additional repairs under the recall and quoted Mattadeen a price of $2,221.48 to replace the fuel tank on his vehicle.

Plaintiff Cindy Cunningham is a resident of Illinois who purchased a new 2003 Mercedes-Benz E55 AMG on July 12, 2003.  On June 12, 2009, she had repairs performed on her vehicle pursuant to MBUSA's 2008 recall campaign.  However, since the repairs were performed, she has experienced a strong fuel odor inside her vehicle after refueling.  She has also seen fuel pooling on the ground underneath her vehicle on several occasions.  When she informed a Mercedes-Benz service center of the problem, she was told that no further repairs would be performed under the recall and that the cost to fix the fuel leaks would be more than $2,500.  Cunningham's son

subsequently inspected the vehicle and found gasoline sitting on top of one of the fuel sending units and soaking into the rear seat cushion.

Plaintiff Blessilda Mediana is a resident of California who purchased a 2005 Mercedes-Benz E55 AMG in October 2008.  Sometime during 2012, she noticed a strong fuel odor inside the vehicle after refueling.  She took the vehicle to a Mercedes-Benz service authorized dealer, where service technicians performed repairs pursuant to the vehicle's warranty plan. However, the repairs did not resolve the issue, and when Mediana returned to the authorized dealer with the same complaint, the dealer refused to perform additional repairs.

None of the named Plaintiffs would have purchased their vehicles if they had known of the defects in the fuel system when they made their purchases.  In addition to some of the named Plaintiffs incurring out-of-pocket costs for repairs, all of the named Plaintiffs' vehicles have diminished value due to these known defects.

II.   Motions to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its

face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).  The Supreme

Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual
> content that allows the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged.  The
> plausibility standard is not akin to a "probability requirement,"
> but it asks for more than a sheer possibility that a defendant has
> acted unlawfully.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).

Thus, a claim will survive a motion to dismiss only if the factual allegations

in the complaint are "enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555.

   In considering a defendant's motion to dismiss under Rule 12(b)(6),

the allegations in the complaint must be accepted as true and construed in

the light most favorable to the plaintiff.  *Powell v. Thomas*, 643 F.3d 1300,

1302 (11th Cir. 2011).  But the court need not accept the plaintiff's legal

conclusions, nor must it accept as true legal conclusions couched as factual

allegations.  *Iqbal*, 556 U.S. at 678.  Thus, evaluation of a motion to dismiss

requires two steps: (1) eliminate any allegations in the complaint that are

merely legal conclusions, and (2) where there are well-pleaded factual

allegations, "assume their veracity and . . . determine whether they

plausibly give rise to an entitlement to relief."  *Id.* at 679.

## A.    Express Warranty

Plaintiffs Herring, Vo, Mattadeen, Cunningham and Mediana bring claims for breach of express warranty on behalf of themselves and the other members of the putative Georgia, Virginia, Florida, Illinois and California classes.  Specifically, they allege that Defendants breached the following provision of the NVLW:

> DEFECTS: Mercedes-Benz USA, LLC (MBUSA) warrants to the original and each subsequent owner of a new Mercedes-Benz vehicle that any authorized Mercedes-Benz Center will make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period.

Am. Compl. ¶ 136.  Defendants contend that Plaintiffs have failed to state an express-warranty claim upon which relief can be granted because they have failed to allege that they (1) presented their vehicles for repairs within the warranty period, or (2) gave the notice required by the express terms of the NVLW and by state law.

### 1.    Time and Mileage Limitations

Defendants contend that Plaintiffs have failed to state a claim for breach of express warranty because they do not allege that they presented their vehicles for repairs within the warranty period.  However, Plaintiffs allege that the NVLW's time and mileage limitations were unconscionable

because "Defendants knew or should have known that the gasoline tanks, fuel sending units, and evaporation tubes were defective when they sold and/or leased to Plaintiffs and members of the Classes their Mercedes-Benz vehicles." *Id.* ¶ 140.

The Uniform Commercial Code ("UCC") contains the following provision regarding unconscionable contacts and clauses:

> (1) If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

> (2) When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

U.C.C. § 2-302.  All of the relevant jurisdictions in this case have adopted a substantially similar provision.  *See* O.C.G.A. § 11-2-302; CAL. CIV. CODE § 1670.5; FLA. STAT. § 672.302; 810 ILL COMP. STAT. § 5/2-302; VA. CODE ANN. § 8.2-302.  However, Plaintiffs have failed to identify any authority from the relevant jurisdictions supporting their position that a warranty's time and mileage limitations may be rendered unconscionable simply because a manufacturer knowingly sells a defective product.  Instead, the

cases upon which they rely show that additional allegations are necessary to support their theory of unconscionability.

Plaintiffs cite only three cases in support of their position.  First, they cite *Gibbs Patrick Farms, Inc. v. Syngenta Seeds, Inc.*, No. 7:06-cv-48-HL, 2008 WL 822522, at *10-12 (M.D. Ga. Mar. 26, 2008), for the general proposition that courts have used the unconscionability provision of the Georgia Commercial Code, O.C.G.A. § 11-2-302, to strike unconscionable warranty limitations.  The Court accepts that general proposition.  However, *Gibbs* does nothing to further Plaintiffs' argument that the warranty limitations at issue in this case were unconscionable.

Second, and primarily, Plaintiffs rely upon an unreported case from the Southern District of Florida, *Barnext Offshore, Ltd. v. Ferretti Group USA, Inc.*, No. 1:10-cv-23869-CMA, 2012 WL 1570057, at *10-11 (S.D. Fla. May 2, 2012).  In that case, the court allowed a yacht owner's express-warranty claim to survive summary judgment because there was evidence that the defendants knew the yacht was defective at the time of the sale.  In so holding, the court stated that "if a product contains a known latent defect then any warranty limits may be unconscionable."  *Id.* at *10 (citing *Lennar Homes, Inc. v. Masonite Corp.*, 32 F. Supp. 2d 396, 401 (E.D. La. 1998)).

14

However, as an unreported decision, *Barnext* has limited precedential value.  Moreover, a closer look at the authority upon which it relied shows that a manufacturer's knowledge that a part is defective at the time of sale is insufficient standing alone to render time and mileage limitations unconscionable under Florida law.

*Barnext* relied upon *Lennar Homes*, in which the U.S. District Court for the Eastern District of Louisiana (applying Florida law) stated that "shipping a product with a known latent defect may infect a limitation with unconscionability."  32 F. Supp. 2d at 401 (citing *Monsanto Agric. Prods. Co. v. Edenfield*, 426 So. 2d 574, 579 (Fla. Dist. Ct. App. 1983)).  However, in *Monsanto*, the Florida District Court of Appeal refused to strike a warranty limitation as unconscionable, distinguishing *Majors v. Kalo Laboratories, Inc.*, 407 F. Supp. 20 (M.D. Ala. 1975).  The *Monsanto* court did not hold that a manufacturer's knowledge of a latent defect is sufficient to make time and mileage limitations unconscionable.  In fact, it noted that in *Majors* the manufacturer did not just knowingly sell a defective product; it also hid the warranty limitation under a section of the contract entitled "100% GROWER GUARANTEED."  *Lennar Homes*, 32 F. Supp. 2d at 401. Thus, *Monsanto* suggests that a manufacturer's knowledge of a latent

defect is insufficient, standing alone, to render the warranty's time and mileage limitations unconscionable.  Plaintiffs have failed to cite any Florida authority that would suggest otherwise.

Finally, Plaintiffs rely upon *Henderson v. Volvo Cars of North America, LLC*, No. 2:09-cv-4146-CCC-JAD, 2010 WL 2925913 (D.N.J. July 21, 2010).  But because it is an unreported decision applying New Jersey law, *Henderson* has no precedential value in this case.  Moreover, to the extent it may have persuasive value, it does not support Plaintiffs' position. The court in that case expressly recognized that "a manufacturer's mere knowledge that a part will ultimately fail . . . does not alone make the time/mileage limitation unconscionable."  *Id.* at *9.  The court allowed the express-warranty claim to proceed only because the plaintiffs alleged "additional claims in support of their unconscionability claims," including the lack of a meaningful choice in determining the time and mileage limitations and a gross disparity in bargaining power.  *Id.* at *9 & n.6.

Apart from the cases Plaintiffs cite, "[s]everal courts have expressly rejected the proposition that a latent defect, discovered outside the limits of a written warranty, may form the basis for a valid express warranty claim if the warrantor knew of the defect at the time of sale."  *Daugherty v. Am.*

16

*Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 122 (Ct. App. 2006).  As the Second

Circuit has explained,

> virtually all product failures discovered in automobiles after
> expiration of the warranty can be attributed to a 'latent defect'
> that existed at the time of sale or during the term of the
> warranty.  All parts will wear out sooner or later and thus have a
> limited effective life.  Manufacturers always have knowledge
> regarding the effective life of particular parts and the likelihood
> of their failing within a particular period of time.  Such
> knowledge is easily demonstrated by the fact that
> manufacturers must predict rates of failure of particular parts
> in order to price warranties and thus can always be said to
> 'know' that many parts will fail after the warranty period has
> expired.  A rule that would make failure of a part actionable
> based on such 'knowledge' would render meaningless
> time/mileage limitations in warranty coverage.

*Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986).

The Court finds this reasoning persuasive.  Therefore, with no contrary

authority from the relevant jurisdictions, the Court holds that Defendants'

knowledge of the alleged defect at the time of sale, standing alone, is

insufficient to render the NVLW's time and mileage limitations

unconscionable.

Because Plaintiffs have failed to allege any other facts that would

support a finding of unconscionability, they have failed to plausibly allege

that the NVLW's time and mileage limitations were unconscionable.  As a

result, Plaintiffs cannot state a plausible claim for breach of the NVLW

17

unless they allege that they presented their vehicles for repairs within the warranty period.  However, Plaintiffs concede that none of them did so. Therefore, their express-warranty claims will be dismissed.

### 2.    Notice Requirement

Even if Plaintiffs had plausibly alleged that the time and mileage limitations were unconscionable, Defendants also contend that Plaintiffs have failed to state a claim for breach of the NVLW because they failed to provide the notice required by the express terms of the NVLW and by state law.  In response, Plaintiffs argue that the provision of the NVLW upon which Defendants rely is inapplicable and that they gave adequate notice under state law by presenting their vehicles to authorized dealers for repairs.  The Court disagrees and holds that Plaintiffs' express-warranty claims should also be dismissed for this reason.

In a section entitled "Warranty Enforcement Laws (Lemon Laws)," the NVLW provides as follows:

> Laws in many states and federal law permit owners and/or lessees to obtain a replacement vehicle or a refund of the purchase or lease price under certain circumstances.  The provisions of these laws vary from state to state and vary from the federal law.  TO the extent allowed or not prohibited by applicable law, Mercedes-Benz USA, LLC requires that you first provide us with direct written notification of any alleged

unrepaired defect or malfunction, or any other dissatisfaction
you have experienced with your vehicle so that we have the
opportunity to cure the problem or dissatisfaction ourselves.
Giving MBUSA itself this direct notice and opportunity to cure
enables us to supplement prior efforts by our authorized dealers
so any ongoing problem can be resolved or the dissatisfaction
addressed by us.  In states that have not enacted Lemon Laws,
we also require, without constituting any liability beyond the
Mercedes-Benz new vehicle warranty, that you give us direct
written notice of any service difficulty you have experienced.
Written notifications, either required under an applicable
Lemon Law or other written notifications should be sent to us,
not one of our dealers, at Mercedes-Benz USA, LLC, Customer
Assistance Center, One Mercedes Drive, Montvale, New Jersey,
07645-0350.[3]

Plaintiffs contend that this section of the NVLW requires written notice to

be given directly to MBUSA only in the context of claims brought under

state lemon laws.  However, the section also requires such notice in "states

that have not enacted Lemon Laws."  Therefore, the Court holds that the

NVLW requires that written notice be given directly to MBUSA before a

claim can be brought for breach of the NVLW.  *See Lewis v. Mercedes-Benz*

*USA, LLC*, No. 1:03-cv-4000-JOF, 2004 WL 3756384, at *4 (N.D. Ga. Sept.

13, 2004) (construing a similar warranty provision).  Plaintiffs do not allege

---

[3] This language is taken from page 53 of the NVLW that is attached to Plaintiffs'
original complaint as Exhibit A and incorporated by reference into Plaintiffs' amended
complaint.

that they gave such notice, providing an additional reason for the Court to dismiss their express-warranty claims.

### B.    Implied Warranty of Merchantability

The same Plaintiffs who bring claims for breach of express warranty also bring claims for breach of the implied warranty of merchantability. Defendants contend that those claims should be dismissed because (1) the implied warranty of merchantability is also subject to the time and mileage limitations of the NVLW, (2) Plaintiffs' implied-warranty claims are barred by the relevant state statutes of limitations, and (3) Plaintiffs were not in privity with Defendants.

### 1.    Time and Mileage Limitations

Defendants contend that Plaintiffs' claims for breach of the implied warranty of merchantability should be dismissed because they failed to present their vehicles for repairs within the time required by the NVLW, which provides as follows:

> THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE ARE LIMITED TO THE FIRST TO OCCUR OF 48 MONTHS OR 50,000 MILES

FROM THE DATE OF INITIAL OPERATION OR ITS RETAIL DELIVERY, WHICHEVER EVENT SHALL FIRST OCCUR.[4]

In response, Plaintiffs again contend that the time and mileage limitations are unconscionable, and they cite one additional case in support of their position, *Carlson v. General Motors Corp.*, 883 F.2d 287 (4th Cir. 1989).

However, Plaintiffs still have failed to show that a manufacturer's knowledge that a part is defective at the time of sale is sufficient by itself to render time and mileage limitations unconscionable.  *Carlson* is not to the contrary.  In that case, the Fourth Circuit held that the district court was wrong to dismiss the plaintiffs' implied-warranty claim because their complaint "specifie[d] ten separate 'reasons' why GM's imposition of durational limitations on the operation of implied warranties was both 'unreasonable' and 'unconscionable.'"  *Carlson*, 883 F.2d at 294.  While the court found GM's knowledge of the inherent defects in its diesel engines to be "perhaps" the most significant of the plaintiffs' allegations, it did not hold that such knowledge was sufficient by itself.  *Id.*

---

[4] This language is taken from page 13 of the NVLW that is attached to Plaintiffs' original complaint as Exhibit A and incorporated by reference into Plaintiffs' amended complaint.

In short, Plaintiffs' claims for breach of the implied warranty of merchantability will also be dismissed because they fail to allege that they presented their vehicles for repairs within the warranty period.

### 2.    Statute of Limitations

Defendants also contend that Plaintiffs' implied-warranty claims should be dismissed because they are barred by the relevant statutes of limitations.  Both parties discuss this issue on the assumption that each Plaintiff's claim is governed by the statute of limitations in that Plaintiff's state of residence.  However, "in a diversity case, the district court applies the forum state's choice-of-law rules."  *Chau Kieu Nguyen v. JP Morgan Chase Bank*, NA, 709 F.3d 1342, 1346 n.3 (11th Cir. 2013).  Under Georgia law, and the rule of *lex fori*, "procedural or remedial questions are governed by the law of the forum," *Fed. Ins. Co. v. Nat'l Distrib. Co.*, 417 S.E.2d 671, 673 (1992), and statutes of limitations are considered procedural, *Gray v. Armstrong*, 474 S.E.2d 280, 281 (Ga. Ct. App. 1996).  Consequently, the relevant Georgia statute of limitations governs all of Plaintiffs' implied-warranty claims in this case.

Georgia has adopted the UCC's four-year statute of limitations in relation to contracts for the sale of goods, O.C.G.A. § 11-2-725(1), and this

applies to implied-warranty claims, *Wal-Mart Stores, Inc. v. Wheeler*, 586

S.E.2d 83, 87-88 (Ga. Ct. App. 2003).  The statute defines the accrual of a

cause of action as follows:

> A cause of action accrues when the breach occurs, regardless of
> the aggrieved party's lack of knowledge of the breach.  A breach
> of warranty occurs when tender of delivery is made, except that
> where a warranty explicitly extends to future performance of
> the goods and discovery of the breach must await the time of
> such performance the cause of action accrues when the breach
> is or should have been discovered.

O.C.G.A. § 11-2-725(2).

Defendants argue that Plaintiffs' implied-warranty claims accrued

when their vehicles were first sold, which in each case was more than four

years before this action was filed.  Plaintiffs counter that their warranties

"explicitly extend[ed] to future performance" such that their claims did not

accrue until they discovered the defect.  However, the Court agrees with

Defendants.  "[A]n implied warranty by its nature cannot 'explicitly extend

to future performance' and thus does not fall within that exception."  *Clark*

*v. DeLaval Separator Corp.*, 639 F.2d 1320, 1325 (5th Cir. 1981); *see also*

*Everhart v. Rich's, Inc.*, 196 S.E.2d 475, 476 (Ga. Ct. App. 1973) (statute of

limitations began to run on implied-warranty claim when the goods were

delivered, absent any explicit extension of the warranty to future

performance).  Therefore, all of Plaintiffs' implied-warranty claims are barred by the statute of limitations, providing an additional reason for the Court to dismiss those claims.

### 3.    Privity

Defendants also argue that the implied-warranty claims of Vo, Mattadeen, Cunningham and Mediana should be dismissed because Virginia, Florida, Illinois and California all require privity for implied-warranty claims, and those Plaintiffs bought their vehicles from third parties rather than directly from Defendants.[5]  In response, Plaintiffs argue that courts have relaxed the privity requirement where a plaintiff buys from an authorized dealer and receives an express warranty.

As an initial matter, Virginia has generally eliminated the privity requirement for breach-of-warranty claims.  VA. CODE ANN. § 8.2-318.

---

[5] MBUSA does not contend that Herring's implied-warranty claim should be dismissed on this ground, presumably because there would be privity between MBUSA and Herring under Georgia law.  *See Chrysler Corp. v. Wilson Plumbing Co.*, 435, 208 S.E.2d 321, 323 (Ga. Ct. App. 1974) ("[W]here an automobile manufacturer, through its authorized dealer issues to a purchaser of one of its automobiles from such dealer admittedly as a part of the sale a warranty by the manufacturer running to the purchaser, privity exists . . . .").  However, Daimler argues that Herring's implied-warranty claim against it should be dismissed for lack of privity because it did not issue the warranty in question.  The Court agrees.  Therefore, this provides an additional ground for dismissing Herring's implied-warranty claim against Daimler, but not against MBUSA.

However, the requirement remains when the plaintiff seeks consequential economic loss damages. *Beard Plumbing & Heating, Inc. v. Thompson Plastics, Inc.*, 491 S.E.2d 731, 734 (Va. Ct. App. 1997). Because it is yet to be seen whether Vo seeks direct or consequential damages on his implied-warranty claim, the Court is not inclined to dismiss that claim for lack of privity at this stage. However, Vo's implied-warranty claim will still be dismissed for the reasons discussed above.

The other relevant states, Florida, Illinois and California, all require privity for implied-warranty claims. *Jensen v. Bayer AG*, 862 N.E.2d 1091, 1099 (Ill. App. Ct. 2007) ("In order for a plaintiff to file a claim for economic damages under the [Illinois UCC] for the breach of an implied warranty, he or she must be in vertical privity of contract with the seller."); *Mesa v. BMW of N. Am., LLC*, 904 So.2d 450, 458 (Fla. Dist. Ct. App. 2005) ("Under Florida law, a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."); *All W. Elecs., Inc. v. M-B-W, Inc.*, 75 Cal. Rptr. 2d 509, 514 (Ct. App. 1998) ("Privity of contract is a prerequisite in California for recovery on a theory of breach of implied warranties of fitness and merchantability.").

Plaintiffs cite no authority from Florida in support of their position that the privity requirement has been relaxed where a plaintiff buys from an authorized dealer and receives an express warranty.  Indeed, under Florida law, "the existence of a manufacturer's warranty which runs to the buyer does not in and of itself establish privity."  *David v. Am. Suzuki Motor Corp.*, 629 F. Supp. 2d 1309, 1322 (S.D. Fla. 2009) (collecting cases).  Therefore, Mattadeen's lack of privity with Defendants provides another reason to dismiss his implied-warranty claim.

With respect to Illinois, Plaintiffs rely on *Shoop v. DaimlerChrysler Corp.*, 864 N.E.2d 785, 792 (Ill. App. Ct. 2007).  In that case, the Illinois Appellate Court stated the following:

> Although the UCC extends a buyer's potential cause of action for breach of the implied warranty of merchantability only to an immediate seller, the privity requirement has been 'relaxed' when (1) a manufacturer has extended a written warranty with a product; and (2) a consumer brought an action against the manufacturer under the Magnuson-Moss Act.

*Id.*  This principle was derived from the decisions of the Illinois Supreme Court in *Szajna v. General Motors Corp.*, 503 N.E.2d 760 (Ill. 1986), and *Rothe v. Maloney Cadillac, Inc.*, 518 N.E.2d 1028 (Ill. 1988).  However, as those cases make clear, the privity requirement remains for claims brought under Illinois law.  *See Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*, 807

N.E.2d 1165, 1169 (Ill. App. Ct. 2004) ("In short, under our internal law, our supreme court still requires privity even where the manufacturer issues a written warranty, but has held that under Magnuson-Moss privity is deemed to exist where there is a written warranty."). Thus, Cunningham's lack of privity with Defendants provides another reason to dismiss her state-law implied-warranty claim.

Moreover, this Court is not bound by Illinois courts' interpretation of the Magnuson-Moss Act. *See Finch v. Ford Motor Co.*, 327 F. Supp. 2d 942, 945-46 (N.D. Ill. 2004) (declining to relax the privity requirement in the context of the Magnuson-Moss Act despite contrary Illinois authority). As discussed below, implied-warranty claims brought under the Magnuson-Moss Act are dependent upon the underlying state-law claim. For this reason, the federal circuit that encompasses Illinois has expressly held that privity is required under the Magnuson-Moss Act when the claim is based on Illinois law. *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 525 (7th Cir. 2003). Consequently, Cunningham's implied warranty claim fairs no better under Magnuson-Moss than it does under Illinois law, and her lack of privity with Defendants provides another reason to dismiss both of her implied-warranty claims.

With respect to California, Plaintiffs contend there is no privity requirement where the plaintiff buys from an authorized dealer, citing *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1244 n.68 (C.D. Cal. 2011).  In *Cholakyan*, the court noted that other courts have held that "individuals who purchase a vehicle from an authorized dealership can maintain an implied warranty cause of action against the manufacturer as third party beneficiaries."  *Id*; *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1185 ("[W]here a plaintiff pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability, he or she may assert a claim for the implied warranty's breach.").

In response, Defendants argue that there is a split of authority in California and that the Court should not follow the cases recognizing the third-party beneficiary exception to the privity requirement.  However, this is "an established exception articulated by California appellate courts."  *Id.* Therefore, the Court will determine whether it applies.  Defendants argue that Mediana is not a third-party beneficiary of the original sales contract because although she purchased her vehicle from an authorized dealer, she

purchased it used.  However, MBUSA's express warranty extends to "the original and each subsequent owner of a new Mercedes-Benz vehicle."  This makes it plausible that the original sales contract was intended to benefit subsequent owners, such as Mediana.  Consequently, the Court would not be inclined to dismiss Mediana's implied-warranty claim for lack of privity.  However, that claim will still be dismissed for the reasons discussed above.

C.    Magnuson-Moss Warranty Act

Defendants argue that if Plaintiffs' state-law warranty claims are dismissed, then their claims under the Magnuson-Moss Warranty Act ("MMWA") must be dismissed as well because they are based upon the same allegations.  Plaintiffs do not respond to this argument, and the Court agrees with Defendants.  "The Act does not provide an independent cause of action for state law claims, only additional damages for breaches of warranty under state law." *Fedrick v. Mercedes-Benz USA, LLC*, 366 F. Supp. 2d 1190, 1200 n.14 (N.D. Ga. 2005) (citing *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1016 (D.C. Cir. 1986)).  Because Plaintiffs' state-law breach-of-warranty claims will be dismissed, and because Plaintiffs have not alleged a violation of the MMWA independent of those claims, their MMWA claims must also be dismissed.

29

D.     Implied Covenant of Good Faith and Fair Dealing

Plaintiffs Herring, Vo, Mattadeen, Cunningham and Mediana bring claims for breach of the implied covenant of good faith and fair dealing on behalf of themselves and the other members of the putative Georgia, Virginia, Florida, Illinois and California classes.  They contend that Defendants failed to act fairly and in good faith in performing their warranty obligation to "make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period."  They contend that Defendants breached the implied covenant in two ways: (1) "by distributing vehicles with known safety defects and subjecting Plaintiffs to those defects," and (2) by "denying the existence of known, reported, and documented defects and making efforts to avoid its service, repair and replacement obligations."

As an initial matter, Cunningham's claim fails because "breach of the covenant of good faith and fair dealing is not an independent cause of action under Illinois law except 'in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policy holder.'"  *APS Sports Collectibles, Inc. v. Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002) (quoting *Voyles v. Sandia Mortg. Corp.*, 751 N.E.2d

1126, 1131 (Ill. 2001)).  Therefore, the Court will consider only those implied-covenant claims brought by Herring, Vo, Mattadeen and Mediana, as well as the putative classes they represent.

  In each of the those Plaintiffs' states, the implied covenant of good faith and fair dealing can be breached only in relation to the performance of a contractual obligation.  *Flagship Resort Dev. Corp. v. Interval Int'l, Inc.*, 28 So.3d 915, 924 (Fla. Dist. Ct. App. 2010) ("The implied covenant "must be anchored to the performance of an express contractual obligation."); *Spinks v. Equity Residential Briarwood Apartments*, 90 Cal. Rptr. 3d 453, 477 (Ct. App. 2009) ("The implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms of the contract, and cannot be extended to create obligations not contemplated by the contract." (quoting *Pasadena Live, LLC v. City of Pasadena*, 8 Cal. Rptr. 3d 233, 237 (Ct. App. 2004))); *Myung Sung Presbyterian Church, Inc. v. N. Am. Ass'n of Slavic Churches & Ministries, Inc.*, 662 S.E.2d 745, 748 (Ga. Ct. App. 2008) ("The implied covenant modifies and becomes a part of the provisions of the contract, but the covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability."); *Ward's Equip., Inc. v. New Holland N.*

*Am., Inc.*, 493 S.E.2d 516, 520 (Va. 1997) (The implied covenant "cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist.").

Plaintiffs have failed to identify any provision in their warranties that imposed a contractual duty upon Defendants to deliver their vehicles free from any defects.  On the contrary, the warranties expressly acknowledged the possibility of defects by promising to "make any repairs or replacements necessary, to correct defects in material or workmanship arising during the warranty period."  As a result, Plaintiffs cannot state a claim for breach of the implied covenant of good faith and fair dealing based on their allegation that Defendants "distribut[ed] vehicles with known safety defects and subject[ed] Plaintiffs to those defects."

Next, Plaintiffs contend that MBUSA beached the implied covenant of good faith and fair dealing by "denying the existence of known, reported, and documented defects and making efforts to avoid its service, repair and replacement obligations."  However, Plaintiffs fail to identify any provision of their warranties imposing a contractual obligation on MBUSA to notify them of known defects.  Therefore, this allegation will support Plaintiffs' claims only if they presented their vehicles for repairs within the warranty

period, and MBUSA failed to act fairly and in good faith to repair their vehicles.  Because Plaintiffs concede that they failed to present their vehicles for repairs within the warranty period, they cannot state a claim for breach of the implied covenant of good faith based on the allegation that MBUSA "[denied] the existence of known, reported, and documented defects and [made] efforts to avoid its service, repair and replacement obligations."

Consequently, Plaintiffs' claims for breach of the implied covenant of good faith and fair dealing will be dismissed for failure to state a claim upon which relief can be granted.

### E.    Unjust Enrichment

In the amended complaint, Plaintiffs McCabe, Herring, Deuel, Vo, and Mediana bring unjust-enrichment claims on behalf of themselves and the putative classes they represent.  However, in response to Defendnats' motions to dismiss, Herring and Mediana have withdrawn their unjust-enrichment claims.  Therefore, the only remaining claims are those of McCabe (Georgia), Deuel (Texas) and Vo (Virginia), as well as the putative classes they represent.

Those Plaintiffs allege that Defendants were unjustly enriched both when they purchased their vehicles and when they purchased replacement parts for those vehicles.  However, in their response to Defendants' motions to dismiss, Plaintiffs rely solely on the allegation that Defendants were unjustly enriched when they purchased their replacement parts; therefore, Plaintiffs have abandoned any unjust enrichments claims they previously asserted based on the purchases of their vehicles.  *Hudson v. Norfolk S. Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001) ("When a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned.").

Defendants contend that Plaintiffs' unjust-enrichment claims fail because the relevant vehicles were out of warranty when purchased and therefore Defendants could not have reasonably been expected to pay for any necessary repairs.  In response, Plaintiffs clarify the theory behind their unjust-enrichment claims.  Specifically, they contend that Defendants were obligated to cover the cost of the repairs under the Motor Vehicle Safety Act ("MVSA") and that Defendants were therefore unjustly enriched when Plaintiffs paid for the repairs instead.  In reply, Defendants simply maintain

that to allow Plaintiffs to recover under this theory would render warranty limitations meaningless.

The Court agrees that to allow Plaintiffs to recover under this theory would render the warranty limitations meaningless, but more importantly, Plaintiffs' reliance on the MVSA is misplaced.  The MVSA does not create a private right of action, *Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 523-24 (11th Cir. 2000), and Plaintiffs cannot "overcome that obstacle" by fashioning an alternative claim that "is in essence a suit to enforce the statute itself," *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 131 S. Ct. 1342, 1348 (2011).  Plaintiffs' unjust-enrichment claim is just that—it seeks to enforce the MVSA's recall mandate by requiring Defendants to reimburse Plaintiffs for the cost of their repairs.  The Court has no power to recognize what would effectively be the private right of action that Congress declined to create under the MVSA; therefore, Plaintiffs' unjust-enrichment claims will be dismissed.  *See id.* (contract claim was properly dismissed when it was in essence a suit to enforce the Public Health Services Act, which did not create a private right of action); *cf. Lowe v. Gen. Motors Corp.*, 624 F.2d 1373, 1379-81 (5th Cir. 1980) (An MVSA violation was appropriately used as evidence of negligence because "the suit was not to enforce the

35

MVSA, nor would an application one way or the other necessarily have had decisive consequences.").

### F.    Fraudulent Concealment

Plaintiffs bring common-law fraudulent concealment claims under the laws of their respective states.  Defendants contend that these claims should be dismissed because (1) Plaintiffs have not pled the circumstances of the fraud with particularity pursuant to Federal Rule of Civil Procedure 9(b), and (2) Plaintiffs have not plausibly alleged that Defendants had a duty to disclose the alleged defect.

Many of the arguments Defendants make under the rubric of Rule 9(b) do not concern the particularity of Plaintiffs' allegations but rather whether Plaintiffs have stated a plausible claim to relief.  Thus, the Court's analysis will proceed in two parts.  First, the Court will determine whether Plaintiffs have satisfied Rule 9(b)'s heightened pleading standard.  Second, the Court will determine whether Plaintiffs have plausibly alleged all of the elements of fraud under the laws of their respective states, including that Defendants had a duty to disclose the alleged defect.

### 1.    Rule 9(b)

Under, Federal Rule of Civil Procedure 9(b), a complaint alleging

fraud "must state with particularity the circumstances constituting fraud."

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely
> what statements were made in what documents or oral
> representations or what omissions were made, and (2) the time
> and place of each such statement and the person responsible for
> making (or, in the case of omissions, not making) same, and (3)
> the content of such statements and the manner in which they
> misled the plaintiff, and (4) what the defendants obtained as a
> consequence of the fraud.

*United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310

(11th Cir. 2002) (quoting *Ziemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202

(11th Cir. 2001)).

However, Rule 9(b) also provides that "[m]alice, intent, knowledge,

and other conditions of a person's mind may be alleged generally."  Thus, it

"does not require a plaintiff to allege specific facts related to the defendant's

state of mind when the allegedly fraudulent statements [or omissions] were

made."  *Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008).

Instead, it is sufficient to plead "the who, what, when, where, and how" of

the allegedly fraudulent statements or omissions and then allege generally

that those statements or omissions were made with the requisite intent.  *Id.*

To the extent Defendants contend that Plaintiffs have failed to plead Defendants' knowledge of the defect with particularity, their argument is without merit.  Plaintiffs have generally alleged such knowledge, and that is all that is required by Rule 9(b).  Turning to what is actually required by the Rule, the Court also finds that Plaintiffs have pled the circumstances of the alleged fraud with sufficient particularity.

First, Plaintiffs allege that "Defendants concealed facts from all Plaintiffs and the public that Defendants knew 2003-2009 Mercedes-Benz E-Class vehicles were manufactured with a fuel tank defect."  Am. Compl. ¶ 212.  Thus, they have set forth "precisely . . . what omissions were made." *Clausen*, 290 F.3d at 1310 (quoting *Ziemba*, 256 F.3d at 1202).  Second, Plaintiffs allege the dates on which each of them purchased their vehicles, and they contend that Defendants should have disclosed the defect at the time of purchase.[6]  Thus, they have set forth "the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same." *Id.*  Third, Plaintiffs allege that they would never have purchased their vehicles had they known of the defect.  Am. Compl. ¶ 219.  Thus, they have alleged "the content of [the omission] and

---

[6] *See* Am. Comp. ¶¶ 40, 42, 47, 49, 56, 58, 63, 65, 70-71, 73, 77, 79, 85, 87, 93, 95.

the manner in which [it] misled [them]." *Id.*  Finally, Plaintiffs allege that "Defendants intended on inducing Plaintiffs to purchase the vehicles wherein they would have to pay out-of-pocket costs to replace defective parts." Am. Comp. ¶ 216.  Thus, they have alleged "what the defendants obtained as a consequence of the fraud." *Id.*

### 2.    Elements of Fraud

Because Plaintiffs have satisfied the requirements of Rule 9(b), the Court will now determine whether they have plausibly alleged the elements of fraud under the laws of their respective states.  Defendants primarily contend that Plaintiffs have failed to plausibly allege that Defendants had a duty to disclose the defect, although they make arguments related to the other elements as well.

In each of Plaintiffs' states, the failure to disclose a material fact will support a claim of fraud only if the defendant had a duty to disclose the fact.  Each of the relevant states imposes a duty to disclose in the context of fiduciary or confidential relationships, but the parties agree that no such relationship existed here.  Defendants contend that the absence of a fiduciary or confidential relationship defeats Plaintiffs' fraudulent-concealment claims in all of the relevant jurisdictions except for California,

and that Plaintiffs have failed to plausibly allege that Defendants had a duty to disclose under the California standard.  However, many of Plaintiffs' states recognize that special circumstances may give rise to a duty to disclose outside the context of fiduciary or confidential relationships, and Plaintiffs contend that the circumstances of this case gave rise to a duty to disclose in each of their respective jurisdictions.  The Court will analyze the laws of each state in turn.

### a.    Georgia Plaintiffs

Under Georgia law, "[t]he tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and (5) damages." *ReMax N. Atlanta v. Clark*, 537 S.E.2d 138, 141 (Ga. Ct. App. 2000).  In the context of fraudulent-concealment claims, the scienter element requires that "the alleged defrauder had actual, not merely constructive, knowledge of the fact concealed." *Id.* at 142.  In addition, only the "[s]uppression of a material fact which a party is under an obligation to communicate" can support such a claim.  O.C.G.A. § 23-2-53.

"The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."

*Id.*  The particular circumstances of the case may give rise to an obligation to communicate where there is a concealment of "intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover."  *Rivers v. BMW of N. Am., Inc.*, 449 S.E.2d 337, 340 (Ga. Ct. App. 1994) (quoting *Bill Spreen Toyota, Inc. v. Jenquin*, 294 S.E.2d 533, 539 (Ga. Ct. App. 1982)).

The Georgia Plaintiffs, McCabe and Herring, both allege that at the time they purchased their vehicles, "Defendants failed to disclose to [them] or to the public the fact that there were underlying safety defects with the gasoline tanks contained in [the models they purchased]."  Am. Compl. ¶¶ 42, 49.  Like the undisclosed damage and repairs at issue in *Rivers*, the defects in the gasoline tanks of the vehicles McCabe and Herring purchased were "intrinsic qualities" that could not have been discovered through the exercise of ordinary prudence and caution.  Therefore, McCabe and Herring have plausibly alleged that Defendants omitted a material fact that they had a duty to disclose under Georgia law.

McCabe and Herring have also plausibly alleged the scienter and intent elements of fraud under Georgia law.  McCabe purchased his vehicle in January 2012, and Herring purchased hers in April 2009.  Plaintiffs

allege that Defendants were "aware of the defect as early as 2008, and perhaps sooner." Am. Compl. ¶ 33.  Therefore, McCabe and Herring have plausibly alleged that Defendants had actual knowledge of the defect at the time they purchased their vehicles.  Plaintiffs also allege that "Defendants intended on inducing Plaintiffs to purchase the vehicles wherein they would have to pay out-of-pocket costs to replace defective parts."  *Id.* ¶ 216. Therefore, Plaintiffs have plausibly alleged the requisite intent.

McCabe and Herring also allege that they expected to receive vehicles free from design or manufacturing defects and that they would not have purchased their vehicles had they known of the defect.  *Id.* ¶¶ 41-42, 48-49. Thus, they have plausibly alleged justifiable reliance.  In addition, McCabe alleges that he paid for repairs out of pocket, *id.* ¶ 45-46, and Herring alleges that she traded in her vehicle at a reduced value due to the defect, *id.* ¶ 54.  Thus, they have plausibly alleged damages.  Because McCabe and Herring have plausibly alleged all of the elements of fraud under Georgia law, they will be allowed to proceed with their fraud claims.

### b.   Texas Plaintiffs

In order to prevail on a claim of fraud Under Texas law, a plaintiff must show that

> (1) that the speaker made a material misrepresentation (2) that he knew was false when he made it or that he made recklessly as a positive assertion without any knowledge of its truth (3) with the intent that the other party act upon it and (4) that the other party acted in reliance on the misrepresentation and (5) suffered injury thereby.

*Fazio v. Cypress/GR Houston I, L.P.*, No. 01-09-00728-CV, 2013 WL 1416558, at *23 (Tex. App. Apr. 5, 2013).  "As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information."  *Bradford v. Vento,* 48 S.W.3d 749, 755 (Tex. 2001).  "Thus, silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent."  *Id.*

The particular circumstances impose a duty on a party to speak where (1) the defendant knew that the plaintiff was ignorant of a material fact, and (2) the plaintiff did not have an equal opportunity to discover the fact.  *See Springs Window Fashions Div., Inc. v. The Blind Maker, Inc.*, 184 S.W.3d 840, 876 (Tex. App. 2006).  Therefore, a plaintiff may prevail on a claim for fraudulent concealment when

> (1) a party conceals or fails to disclose a material fact within the knowledge of that party; (2) the party knows the other party is ignorant of the fact and does not have an equal opportunity to discover the truth; (3) the party intends to induce the other party to take some action by concealing or failing to disclose the

fact; and (4) the other party suffers injury as a result of acting without knowledge of the undisclosed fact.

*Fazio*, 2013 WL 1416558, at *23.

The Texas Plaintiffs, Stone and Deuel, both allege that at the time they purchased their vehicles "Defendants failed to disclose to [them] or to the public the fact that there were underlying safety defects with the gasoline tanks contained in [the models they purchased]." Am. Compl. ¶¶ 58, 65. Moreover, Stone purchased his vehicle in July 2011, and Deuel purchased his in June 2011. Plaintiffs allege that Defendants were "aware of the defect as early as 2008, and perhaps sooner." Am. Compl. ¶ 33. Therefore, Stone and Deuel have plausibly alleged that Defendants failed to disclose a material fact that they knew to be unknown to Stone and Deuel. Plaintiffs also allege that "Defendants intended on inducing Plaintiffs to purchase the vehicles wherein they would have to pay out-of-pocket costs to replace defective parts." *Id.* ¶ 216. Therefore, Stone and Deuel have plausibly alleged the requisite intent.

In addition, Stone and Deuel allege that they expected to receive vehicles free from design or manufacturing defects and that they would not have purchased their vehicles had they known of the defect. *Id.* ¶¶ 57-58, 64-65. They both further allege that they "received [vehicles] that [have] a

44

diminished value for what [they] believed he had paid for and purchased," *id* 46, ¶¶ 58, 65, and Deuel alleges that he paid out-of-pocket costs for repairs, *id.* ¶ 68.  Thus, they have plausibly alleged that they suffered injury as a result of acting without knowledge of the undisclosed fact.  As a result, Stone and Deuel will be allowed to proceed with their fraud claims.

### c.   Virginia Plaintiff

Under Virginia law, "the wrong of fraud requires an intentional, knowing misrepresentation by a defendant of a material fact upon which a plaintiff has relied to its detriment.  Concealment of a fact that is material to the transaction, knowing that the other party is acting on the assumption that no such fact exists, is as much fraud as if existence of the fact were expressly denied."  *Jared & Donna Murayama 1997 Trust v. NISC Holdings, LLC*, 727 S.E.2d 80, 86 (Va. 2012) (quoting *Metrocall of Del., Inc. v. Cont'l Cellular Corp.*, 437 S.E.2d 189, 193 (1993)).  However, a misrepresentation by nondisclosure requires "evidence of a knowing and a deliberate decision not to disclose a material fact."  *Lambert v. Downtown Garage, Inc.*, 553 S.E.2d 714, 717-18 (Va. 2001) (quoting *Norris v. Mitchell*, 495 S.E.2d 809, 812 (Va. 1998)).  For example, "[a] contracting party's willful nondisclosure of a material fact that he knows is unknown to the

other party may evince an intent to practice actual fraud." *Spence v. Griffin*, 372 S.E.2d 595, 595 (Va. 1988).

The Virginia Plaintiff, Vo, purchased his vehicles in December 2008 and December 2010, and Plaintiffs allege that Defendants were aware of the defect in 2008. These allegations make it plausible that Defendants willfully concealed a material fact. Moreover, Vo alleges that he expected to receive vehicles free from design or manufacturing defects and that he would not have purchased his vehicles had he known of the defect. Am. Compl. ¶¶ 72-73. Thus, he has plausibly alleged justifiable reliance. He also alleges that he paid out-of-pocket costs for repairs, *id.* ¶ 75, and that "[a]s a result of the defect, [he] received vehicles that have a diminished value from what he believed he had paid for and purchased," *id.* ¶ 73. Thus, he has plausibly alleged damages. In short, Defendants' motions to dismiss Vo's fraud claim will be denied.

### d.   Florida Plaintiff

Under Florida law, "[f]raud based upon a failure to disclose material information exists only when a duty to make such disclosure exists." *Friedman v. Am. Guardian Warranty Servs., Inc.*, 837 So.2d 1165, 1166 (Fla Dist. Ct. App. 2003). "The classic illustration of fraud is where one

party having superior knowledge intentionally fails to disclose a material fact, which is not discoverable by ordinary observation, especially where coupled with a trick or artifice." *Nessim v. DeLoache*, 384 So.2d 1341, 1344 (Fla. Dist. Ct. App. 1980) (internal citations omitted); *see also Ramel v. Chasebrook Constr. Co.*, 135 So.2d 876, 882 (Fla. Dist. Ct. App. 1962) ("[N]ondisclosure of a material fact may be deemed fraudulent where the other party does not have equal opportunity to become apprised of the fact.").

The Florida Plaintiff, Mattadeen, alleges that at the time of his purchase, "Defendants failed to disclose to [him] or to the public the fact that there were underlying safety defects with the gasoline tanks contained in [the model he purchased]." Am. Compl. ¶ 79. However, he purchased his vehicle in April 2004, and Plaintiffs have failed to plausibly allege that Defendants knew of the defect earlier than 2008. Therefore, with respect to Mattadeen, this is not a situation where "one party having superior knowledge intentionally fails to disclose a material fact." *Nessim*, 384 So.2d at 1344. As a result, Mattadeen has failed to plausibly allege that Defendants had a duty to disclose the defect to him at the time of his purchase, and his fraud claim will be dismissed.

e.    Illinois Plaintiff

Under Illinois law, "to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996).  Such a duty may arise "if plaintiff and defendant are in a fiduciary or confidential relationship" or if "plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Id.*

In *Connick*, the plaintiffs each purchased a Suzuki Samurai sport utility vehicle from one of Suzuki's authorized dealers, and they brought a fraudulent concealment claim based on Suzuki's failure to disclose the Samurai's excessive roll-over risk. *Id.*  However, the Supreme Court of Illinois held that the claim was properly dismissed because the plaintiffs failed to allege that they were in a confidential or fiduciary relationship with Suzuki or that Suzuki was in a position of superiority over them.  *Id.*

In this case, the Illinois Plaintiff, Cunningham, alleges that she "purchased a 2003 Mercedes-Benz E55 AMG new from an authorized Mercedes-Benz dealership" and that "Defendants failed to disclose to [her] or to the public the fact that there were underlying safety defects with the

48

gasoline tanks contained in Mercedes-Benz E55 AMG vehicles."  Am.

Compl. ¶¶ 85, 87.  However, like the plaintiffs in *Connick*, she fails to allege

that she was in a confidential or fiduciary relationship with Defendants or

that Defendants were in a position of superiority over her.  Plaintiffs argue

that Defendants were in a position of superiority because of their exclusive

knowledge of the alleged defect.  However, they have failed to explain how

that knowledge is any different from Suzuki's exclusive knowledge of the

excessive roll-over risk of its Samurai vehicle in *Connick*.  Moreover,

Cunningham purchased her vehicle in July 2003, and Plaintiffs do not

allege that Defendants knew of the defect before 2008.  Thus, Cunningham

has failed to plausibly allege that Defendants had a duty to disclose the

alleged defect to her at the time of her purchase, and her fraud claim will be

dismissed.

### f.   California Plaintiff

The elements of fraud under California law are similar to those of the

other states discussed above: "(1) misrepresentation of a material fact

(consisting of false representation, concealment or nondisclosure);

(2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance;

(4) justifiable reliance on the misrepresentation; and (5) resulting damage."

*People ex rel. Harris v. Rizzo*, 154 Cal. Rptr. 3d 443, 466-67 (Ct. App. 2013) (quoting *Bower v. AT & T Mobility, LLC*, 127 Cal. Rptr. 3d 569, 579 (Ct. App. 2011)).

"The suppression of a fact, by one who is bound to disclose it," is a type of deceit that may support a claim of fraud.  CAL. CIV. CODE § 1710 (West 2013).  The duty to disclose "arises only where there exists a confidential relation between the parties or other special circumstances require disclosure."  *Intrieri v. Superior Court*, 12 Cal. Rptr. 3d 97, 108-09 (Ct. App. 2004).  Of particular relevance, "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue.  *Oestreicher v. Alienware Corp.*, 322 F. App'x 489, 493 (9th Cir. 2009) (citing *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 126-27 (Ct. App. 2006)).

The California Plaintiff, Mediana, alleges that at the time of her purchase, "Defendants failed to disclose to [her] or to the public the fact that there were underlying safety defects with the gasoline tanks contained in [the model she purchased]."  Am. Compl. ¶ 95.  In addition, Plaintiffs allege that there are serious safety risks pertaining to uncontained gasoline.  Am. Compl. ¶¶ 22-24.  Because manufacturers have a duty to disclose safety

issues under California law, Plaintiffs have plausibly alleged that
Defendants had such a duty.

Moreover, Mediana purchased her vehicle in October 2008, and
Plaintiffs have plausibly alleged that Defendants knew of the defect by that
time.  Therefore, Mediana has sufficiently pled the scienter element under
California law.  In addition, she alleges that she expected to receive a
vehicle free from design or manufacturing defects and that she would not
have purchased her vehicle had she known of the defect.  *Id.* ¶¶ 94-95.
Thus, she has plausibly alleged justifiable reliance.  Finally, she alleges that
"[a]s a result of the defect, [she] received a vehicle that has a diminished
value from what she believed she had paid for and purchased."  *Id.* ¶ 95.
Thus, she has plausibly alleged damages.  In short, Defendants' motions to
dismiss Mediana's fraud claim will be denied.

III.    Statutory Claims

In the amended complaint, Plaintiffs Stone, Deuel, Vo, Mattadeen,
Cunningham and Mediana bring claims for violations of various state
consumer-protection statutes.  In response to Defendants' motions to
dismiss, Stone and Deuel have withdrawn their claims under the Texas
Deceptive Trade Practices Act, and Mattadeen has withdrawn his claim

under the Florida Deceptive and Unfair Trade Practices Act.  Therefore,

those claims will be dismissed, and the only statutory claims that remain

are those that Vo, Cunningham and Mediana bring on behalf of themselves

and the putative Virginia, Illinois and California classes.

### A.    Virginia Consumer Protection Act

Vo brings a claim under the Virginia Consumer Protection Act, VA.

CODE ANN. § 59.1-200, based on Defendants' failure to disclose the alleged

defect.  Defendants argue that Vo's consumer-protection claim should be

dismissed because (1) he has failed to plead the elements of common-law

fraud with sufficient particularity, and (2) he cannot state a claim under any

of the specific provisions of the Act.  The Court rejects the first argument

because it has already determined that Vo has stated a plausible claim to

relief for common-law fraudulent concealment.  The second argument is

without merit for the same reasons.  *See Lambert v. Downtown Garage,*

*Inc.*, 553 S.E.2d 714, 718 (Va. 2001) (violation of the Act may be founded

upon nondisclosure but requires a knowing and deliberate decision not to

disclose).  The plaintiff in *Lambert* relied on three of the same subsections

as Vo does here.  *See id.* at 716 n.2.  Therefore, Defendants' motions to

dismiss Vo's consumer-protection claim will be denied.

B.   Illinois Uniform Deceptive Trade Practices Act and Illinois Consumer Fraud and Deceptive Business Practices Act

Cunningham brings claims under the Illinois Uniform Deceptive Trade Practices Act, 815 ILL COMP. STAT. § 510/2, and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILL COMP. STAT. § 505/2, based on Defendants' failure to disclose the alleged defect.  Defendants contend that both claims are time-barred and that even if they were not, Cunningham has failed to plead sufficient facts to state a claim upon which relief can be granted.  The Court agrees.

"An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud."  *Connick*, 675 N.E.2d at 595.  "A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase."  *Id.* Cunningham alleges that she would not have purchased her vehicle if she knew about the defect, but does not allege that Defendants knew of the defect at the time of her purchase in 2003.  She also fails to allege that she would have acted differently if Defendants had disclosed the defect to her when they discovered it.  Consequently, she fails to plausibly allege that Defendants concealed a material fact from her.

Moreover, even if Cunningham could otherwise state a claim under one or both Illinois statutes, her claims would be time-barred.  Claims brought under either Act are subject to the same three-year statute of limitations.  *McCready v. Ill. Sec'y of State*, 888 N.E.2d 702, 709 (Ill. App. Ct. 2008) (citing 815 ILL COMP. STAT. § 505/10a(e)).  Defendants argue that Cunningham's claims are time-barred because this action was filed nine years after she purchased her vehicle and more than three years after she received free repairs under the recall.

In response, Cunningham relies upon the discovery rule, which "delays the commencement of the relevant statute of limitations until the plaintiff knows or reasonably should know that he has been injured and that his injury was wrongfully caused."  *Hermitage Corp. v. Contractors Adjustment Co.*, 651 N.E.2d 1132, 1135 (Ill. 1995) (quoting *Jackson Jordan, Inc. v. Leydig, Voit & Mayer*, 633 N.E.2d 627, 630-31 (Ill. 1994)).  She argues that she "did not have such knowledge until after recall work was performed on her vehicle in 2009 and she noticed subsequent gasoline leaks and pooling of gasoline which MBUSA refused to repair."

However, Defendants contend that the recall itself was sufficient to put Cunningham on notice of her potential claims, and the Court agrees.  If Cunningham's claims are based upon Defendants' failure to disclose the defect, then she had knowledge of her injury as soon as she became aware of the defect, or when the recall was performed.  For these reasons, her claims under the Illinois Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud Act will be dismissed.

### C.    California Unfair Competition Law

Mediana brings a claim under California's Unfair Competition Law ("UCL") based upon Defendants' failure to disclose the defect.  Defendants argue that Mediana lacks standing to bring such a claim because she does not allege that she incurred any out-of-pocket expenses as a result of the defect.  They further argue that she has failed to plead fraud with sufficient particularity to state a claim under the UCL.

"To have standing to assert a claim under the UCL, a plaintiff must have 'suffered injury in fact and [have] lost money or property as a result of such unfair competition.  *Aron v. U-Haul Co. of Cal.*, 49 Cal. Rptr. 3d 555, 559 (Ct. App. 2006) (quoting CAL. BUS. & PROF. CODE § 17204).  Mediana alleges that she was deceived by Defendants' failure to disclose the defect

and that she would not have purchased her vehicle otherwise, and this is sufficient to confer standing.  *See Kwikset Corp. v. Superior Court*, 246 P.3d 877, 881 (Cal. 2011) ("[P]laintiffs who can truthfully allege they were deceived by a product's label into spending money to purchase the product, and would not have purchased it otherwise, have 'lost money or property' within the meaning of Proposition 64 and have standing to sue.").  Thus, the Court declines to dismiss Mediana's UCL claim on this ground.

Defendants Rule 9(b) arguments are without merit for the same reasons discussed above with respect to Plaintiffs' fraudulent-concealment claims.  Moreover, Mediana has plausibly alleged that Defendants failed to disclose a safety defect that they had a duty to disclose, which can support a claim under the UCL.  *See Ehrlich v. BMW of N. Am., LLC*, 801 F. Supp. 2d 908, 916 (C.D. Cal. 2010).  Therefore, Defendants' motion to dismiss that claim will be denied.

## IV.   Motions to Strike Class Allegations

Defendants move to strike the class allegations from Plaintiffs' first amended complaint on the ground that their claims are unsuitable for class treatment.  In response, Plaintiffs contend that this motion is premature and that the Court should wait until a motion for class certification is filed

56

to determine whether this case can proceed as a class action.  The Court

agrees.  *See Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D.

Cal. 2012) (class issues should be reserved for Rule 23 motion so long as

complaint addresses all elements of Rule 23); *Korman v. Walking Co.*, 503

F. Supp. 2d 755, 763 (E.D. Pa. 2007) ("There is no good reason for this case

not to proceed down the normal path, i.e., with the Court setting a deadline

for Plaintiff to file a motion for class certification and the parties litigating

the propriety of maintaining the action as a class under the traditional Rule

23(c) rubric.").  Consequently, Defendants' motions to strike the class

allegations in Plaintiffs' amended complaint will be denied.

## V.    Conclusion

Defendants' motions to dismiss [16 & 31] are GRANTED IN PART

AND DENIED IN PART.  The fraudulent-concealment claims of Plaintiffs

McCabe, Herring, Stone, Deuel, Vo and Mediana will be allowed to proceed.

In addition, Vo's claim under the Virginia Consumer Protection Act and

Mediana's claim under California's Unfair Competition Law will be allowed

to proceed.  All of Plaintiffs other claims are DISMISSED.

Defendants' motions to strike the class allegations from the first

amended complaint [17 & 32] are DENIED.

57

IT IS SO ORDERED this 7th day of June, 2013.

_____
Timothy C. Batten, Sr.
United States District Judge