IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **RONAN MCCABE, RANDA HERRING, JON DUSTIN STONE, and MINH VO on behalf of themselves and all others similarly situated,** | **CIVIL ACTION FILE** |
| **Plaintiffs,** | **NO. 1:12-CV-2494-MHC** |
| **v.** | |
| **DAIMLER AG, and MERCEDES-BENZ USA, LLC.,** | |
| **Defendants.** | |

## ORDER

This case comes before the Court on Defendants' Motion for Summary

Judgment [Doc. 110] ("Defs.' Mot."). For the reasons that follow, Defendants'

Motion for Summary Judgment is **GRANTED**.

## I.    FACTUAL BACKGROUND

This is a putative class action brought by residents of Georgia, Texas, and

Virginia based on alleged defects in the fuel systems of 2003-09 model years of

W211 E-Class Mercedes-Benz vehicles.  Defendant Daimler AG, a German

corporation, manufactured the vehicles.  Defendant Mercedes-Benz USA

("MBUSA"), a New Jersey limited liability company and a subsidiary of Daimler AG, distributed the vehicles within the United States.

### A. General Allegations[1]

The vehicles in question are alleged to have defects related to the fuel system, making them prone to leak gasoline vapor into the cabins and leak liquid gasoline outside of the vehicle, as well as causing liquid gasoline to be absorbed into the interior seats. Am. Compl. ¶¶ 2-3.

### B. Facts Concerning Plaintiff Ronan McCabe

Plaintiff Ronan McCabe ("McCabe") is a resident of Georgia who purchased a 2006 Mercedes-Benz E55 AMG on January 24, 2012, from an individual seller named Kale Strickland for $30,000. Defs.' SUMF ¶ 62; Dep. of Ronan McCabe

---

[1] At the outset, the Court notes that as this case is before the Court on Defendants' Motion for Summary Judgment, the Court views the evidence presented by the parties in the light most favorable to Plaintiffs and has drawn all justifiable inferences in favor of Plaintiffs. Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Sunbeam TV Corp. v. Nielsen Media Research, Inc., 711 F.3d 1264, 1270 (11th Cir. 2013). In addition, the Court has excluded assertions of facts by either party that are immaterial or presented as arguments or legal conclusions or any fact not supported by citation to evidence (including page or paragraph number). LR 56.1B(1), NDGa. Further, the Court accepts as admitted those facts in the moving parties' statement that have not been specifically controverted with citation to the relevant portions of the record by the opposing parties. LR 56.1B(2), NDGa. See Defs.' Statement of Undisputed Material Facts [Doc. 110-6] ("Defs.' SUMF"); Pls.' Resp. to Defs.' SUMF [Doc. 131].

taken October 24, 2013 [Doc. 114] ("McCabe Dep.") at 17, 20.  When McCabe

purchased the car, it was six years old, had two prior owners, and had been driven

approximately 53,000 miles.  Defs.' SUMF ¶¶ 63, 67; McCabe Dep. at 19, 22, 41.

There is no evidence that McCabe had any direct communication with Daimler AG

or MBUSA before purchasing the car.  Defs.' SUMF ¶¶ 65, 70; McCabe Dep. at

32-33, 35-36.

Strickland provided McCabe with the vehicle's maintenance records prior to

the sale, which revealed that the vehicle had a history of prior gas-smell issues, had

some related repair work done at the behest of a prior owner, and was the subject

of MBUSA's 2008 voluntary recall campaign related to specific components of the

fuel system of 2003-06 E-Class vehicles.  Defs.' SUMF ¶¶ 72-74; McCabe Dep. at

39-45, Exs. 1-2 [Doc. 110-4].  There is no evidence to indicate that McCabe

reviewed any of the records provided to him by Strickland.  Defs.' SUMF ¶ 75;

McCabe Dep. at 39.   McCabe testified that had he reviewed the records provided

by Strickland, although he was not sure, he probably would not have bought the

car.  McCabe Dep. at 40, 45.  Although he did not review the records, McCabe

took the car to Centennial Motors, a Mercedes-Benz dealer, for an inspection prior

to purchasing the vehicle.  Id. at 35-38.  Based on minor issues identified during

this inspection, McCabe negotiated a lower purchase price of the vehicle.  Id.

The day after he purchased the vehicle, McCabe filled up the car with gasoline and, shortly thereafter, noticed an extremely strong smell of gasoline on the outside of the car and on the next day in the interior of the car. Defs.' SUMF ¶ 77; McCabe Dep. at 49-51. McCabe contacted MBUSA about the issue and was told to take it to a Mercedes dealer for diagnosis, but that the problem was not covered by the prior 2008 recall. McCabe Dep. at 53, 60-61. Additionally, McCabe wrote a letter directly to MBUSA about the issue. Id. at 61-62. McCabe took the vehicle to a Mercedes-Benz dealership, Atlanta Classic Cars, on January 26, 2012, where they performed some work on the fuel system (replacing the fuel sending unit) for $302.87. Id. at 54-55; Defs.' SUMF ¶ 78. Despite this work, sometime after the January repair, McCabe again noticed the same "quite strong" smell of gasoline. McCabe Dep. at 57-59. McCabe took the vehicle back to Atlanta Classic Cars on February 6, 2012, and they replaced the fuel tank for $1,632.25 and reimbursed him the $302.87 he spent previously. Defs.' SUMF ¶ 78; McCabe Dep. at 59-63. After the February 2012 repair, McCabe never encountered the gas smell again. Defs.' SUMF ¶ 79; McCabe Dep. at 75. As of October 2013, McCabe continues to regularly use his vehicle and considers it to be safe to drive. Defs.' SUMF ¶ 80; McCabe Dep. at 96.

### C.    Facts Concerning Plaintiff Randa Herring

Plaintiff Randa Herring ("Herring") is a resident of Georgia who purchased a 2006 Mercedes-Benz E500 on April 9, 2009, from a Mercedes-Benz dealer, Mercedes-Benz of South Atlanta. Defs.' SUMF ¶ 82; Dep. of Randa M. Herring taken October 29, 2013 [Doc. 113] ("Herring Dep.") at 16. At the time of purchase, Herring's vehicle had 41,000 miles. Defs.' SUMF ¶ 84; Herring Dep. at 17. Although there is no evidence that Herring had any direct communication with Daimler AG or MBUSA prior to purchasing the car, Herring did communicate with representatives of Mercedes-Benz of South Atlanta regarding the purchase of her vehicle from the dealership. Defs.' SUMF ¶ 83; Pl. Randa Herring's Resp. to Def. Mercedes-Benz USA's First Set of Interrogs. No. 6, attached as Ex. AA to Defs.' Mot. At the time she purchased her vehicle, Herring also purchased a certified pre-owned warranty which provided coverage until the earlier of December 20, 2010, or 100,000 miles. Defs.' SUMF ¶ 85; Herring Dep., Ex. 1, attached as Ex. U to Defs.' Mot.

Herring first noticed a "very strong" odor of gas in her car in the summer of 2012. Defs.' SUMF ¶ 98; Herring Dep. at 15, 87. At the time, she had eclipsed both the mileage (108,000) and date restrictions on the certified pre-owned warranty. See Herring Dep. at 63. On or about July 1, 2012 (within days of

5

smelling the "very strong" odor), she took her car to a Mercedes-Benz service center, where service technicians determined that the fuel leak was coming from the gas tank, told her she would need a new gas tank, and quoted her a price of $2,896.64 for the repairs. Defs.' SUMF ¶ 102; Herring Dep. at 26-29. Rather than electing to have the repairs done, Herring decided to trade in her vehicle on August 1, 2012. Defs.' SUMF ¶ 106-07; Herring Dep., Exs. 1, 3, attached as Exs. U and Y to Defs.' Mot.

### D.   Facts Concerning Plaintiff Jon Dustin Stone

On July 7, 2011, Plaintiff Jon Dustin Stone ("Stone"), a resident of Texas, purchased a 2007 Mercedes-Benz E63 AMG with 31,340 miles from an individual seller named Satig Der Ohanessian for $37,000. Defs.' SUMF ¶¶ 1-2; Dep. of Jon Dustin Stone taken November 15, 2013 [Doc. 115] ("Stone Dep.") at 12, 37-38; Pl. Jon Dustin Stone's Resp. to Def. Mercedes-Benz USA's First Set of Interrogs. No. 13, attached as Ex. II to Defs.' Mot. Prior to purchasing the car, in order to learn about the service history, Stone called the service adviser at the Mercedes-Benz dealership in California where the vehicle's prior owner had the vehicle serviced. Stone Dep. at 29-30, 41. The service adviser told Stone that the only repair that the vehicle had was related to the engine. Id. at 42. This repair work was taken into consideration when Stone negotiated the price he paid for the car. Id. at 43.

6

On September 30, 2011, over two months after he purchased his vehicle, Stone purchased an aftermarket warranty from NAC, a company unaffiliated with Daimler AG or MBUSA. Defs.' SUMF ¶ 7; Stone Dep. at 43; NAC Vehicle Service Agreement Application, Ex. 5 to the Stone Dep., attached as Ex. I to Defs.' Mot. (indicating the Stone's vehicle's odometer read 36,700 miles as of September 30, 2011). Stone bought the warranty not because of an awareness of the fuel system issues, but to cover any issue that may occur with regard to this used car. Defs.' SUMF ¶ 13; Stone Dep. at 64-65.

Stone testified that he may have begun experiencing gas odor issues as early as November 2011, the date he first took his car to a dealership, Mercedes-Benz of Plano and Park Place, for servicing. Stone Dep. at 59. At that time, Stone asked the Park Place dealer if they would pay for repairs related to the fuel system, and they informed him he would have to pay for it out of pocket. Id. at 63. Stone's second visit to the Mercedes-Benz of Plano and Park Place dealer was on January 18, 2012, when Stone took his car in specifically complaining of a fuel odor and fuel leak. Id. at 62-63. The Park Place dealer replaced the left side fuel-sending unit and installed a seal on the right side sending unit. Defs.' SUMF ¶ 10; Stone Dep. at 63. Stone returned two days later on January 20, 2012, with the same issues, and the Park Place dealer found the new sending unit was still leaking and

7

replaced it, as well as the seal on the left side sending unit. Defs.' SUMF ¶ 10;
Stone Dep. at 63.  Still experiencing the same issues, Stone returned a third time on
February 3, 2012, and the Park Place dealer replaced the entire fuel tank. Id.;
Stone Dep. at 64.  The cost of these repairs, including the deductibles, was covered
by Stone's aftermarket warranty. Defs.' SUMF ¶ 12; Stone Dep. at 64.  Despite
these repairs, Stone testified that he continued to experience a fuel odor in the
cabin of his vehicle every time he got in the car until some point in the latter part
of 2012.  Defs.' SUMF ¶ 11; Stone Dep. at 71-72, 80-81.  Stone did not, however,
take the vehicle back to be serviced related to the fuel odor issue before he sold it
on January 11, 2013.  Stone Dep. at 72-114.

E.     **Facts Concerning Plaintiff Minh Vo's 2006 Mercedes-Benz E500**

Plaintiff Minh Vo ("Vo"), a resident of Virginia, purchased a 2006
Mercedes-Benz E500 in November 2008, from the American Service Center, a
Mercedes-Benz dealership in Arlington, Virginia, for approximately $34,000.
Defs.' SUMF ¶ 109.  Dep. of Minh Vo taken November 8, 2013 [Doc. 116] ("Vo
Dep.") at 21, 25.  Apart from communicating with representatives of the Mercedes-
Benz dealership regarding the purchase of his vehicle, there is no evidence that Vo
had any direct communication with Daimler AG or MBUSA prior to purchasing
the car.  Defs.' SUMF ¶ 110; Vo Dep. at 29-30.  At the time of purchase, Vo's

8

E500 showed 27,355 miles on the odometer, and the car came with a certified pre-owned warranty. Defs.' SUMF ¶ 111; Vo Dep. at 17. Vo also purchased an extended warranty from the dealership. Defs.' SUMF ¶ 112; Vo Dep. at 17.

Vo first noticed a gasoline smell with regard to his E500 in May or June of 2012. Defs.' SUMF ¶ 115; Vo Dep. at 51. Several months later, in November of 2012, Vo took the E500 in for servicing related to the gas smell. Defs.' SUMF ¶ 118; Vo Dep. at 72. The repairs were covered under warranty, and Vo did not pay anything out of pocket. Defs.' SUMF ¶ 119; Vo Dep. at 73. Despite the repairs, the gas smell returned in the Spring or Summer of 2013. Defs.' SUMF ¶ 120; Vo Dep. at 73. As of November 8, 2013, Vo has not had the E500 fuel system repaired a second time. Defs.' SUMF ¶ 121; Vo Dep. at 74.

### F. Facts Concerning Vo's 2005 Mercedes-Benz E55

Vo bought a used 2005 E55 AMG with 55,670 miles on December 23, 2010, from Infiniti of Tyson's Corner, Virginia. Defs.' SUMF ¶¶ 125-26. Vo also purchased an after-market warranty from a company unaffiliated with Defendants. Defs.' SUMF ¶ 127; Vo Dep. at 96. Prior to Vo's ownership, the E55 AMG had parts related to the fuel system replaced under MBUSA's 2008 recall campaign. Vo Dep. at 133-35. Vo claims he first smelled gas inside the E55 AMG within the first several months after buying it. Defs.' SUMF ¶ 130; Vo Dep. at 99. In March

9

2011, Vo took the E55 AMG to American Service Center, a Mercedes-Benz
dealership, to correct the fuel-smell issue and paid $945.28 for repairs related to
the fuel system. Defs.' SUMF ¶¶ 131-32; Vo Dep. at 99-102.  Vo testified that the
gas smell in the E55 AMG resurfaced in 2013, but he had not taken the car in for
repairs as of November 8, 2013. Defs.' SUMF ¶ 135; Vo Dep. 123-26.

### G.    2012 Investigation

On January 23, 2012, the National Highway Traffic Safety Administration
("NHTSA") opened an investigation ("2012 Investigation") into gasoline leaks on
the fuel tanks and related components of certain Mercedes-Benz vehicles.  Second
Am. Compl. [Doc. 59] ("Am. Compl.") ¶ 24.  The 2012 Investigation ultimately
included all 2003 to 2008 Mercedes-Benz E-Class (W211) vehicles. Id.; Letter
from NHTSA to Mercedes-Benz USA, LLC ("MBUSA") date stamped February
14, 2012 [Doc.1-4] ("Notice of 2012 Investigation").  As the 2012 Investigation
encompassed all Mercedes-Benz E-Class (W211) vehicles from 2003 to 2008, all
of Plaintiffs' vehicles in this case were included in the investigation: McCabe
(2006 E55 AMG); Herring (2006 E500); Stone (2007 E63 AMG); and Vo (2006
E500 and 2005 E55 AMG).  Am. Compl. ¶¶ 38, 45, 53, 67-68.  The 2012
investigation examined the following components of the subject vehicles: "fuel

pump assembly, the devices that seal the pump to the fuel tank, the hoses that connect to the fuel pump, and the fuel tank." See Notice of 2012 Investigation.

### H.     2008 Recall

NHTSA's letter announcing the 2012 Investigation into the fuel tanks and related components also mentions a 2008 Voluntary Emissions Recall Campaign #2008-020001 ("2008 Recall") related to all 2003-06 E-Class and 2006 CLS Class vehicles. Am. Compl. ¶ 26; Notice of 2012 Investigation; Notice of Voluntary Emissions Recall Campaign #2008-020001 dated March 2008 [Doc. 1-5] ("Notice of 2008 Recall"). The 2008 Recall involved a more narrow subset of vehicles and model years than were at issue in the 2012 Investigation. Id. Moreover, the 2008 Recall was limited to one vehicle component, the fuel filter modules. See Notice of 2008 Recall. The Notice of 2008 Recall indicated that small cracks could develop in the fuel filter modules of the affected vehicles causing a fuel smell. Id.

### I.     MBUSA Warranty Extension

On September 4, 2014, MBUSA sent a letter to NHTSA announcing its intention to extend the warranty from the original 4 years/50,000 miles (whichever occurs first) to "15 years, regardless of mileage," for "certain fuel tank components in certain Mercedes-Benz vehicles that were the subject of the [2012 Investigation]." Letter from MBUSA to NHTSA dated September 4, 2014 [Doc.

155-3]. The Letter specifies the fuel tank components MBUSA intends to cover: "fuel tank, fuel filter/sender, fuel pump, and related gasket/seals, and retention rings" for 2003-09 E-Class vehicles. Id. The letter provides additional detail:

> If during this period, a covered vehicle experiences a leakage from any of the "Covered Fuel Tank Components" described above, and it is determined that it is due to a warrantable condition that would have been covered had it occurred during the original warranty period, this warranty extension will cover the necessary part(s) and labor to repair or replace the component(s).

> If a covered vehicle has exceeded its original warranty coverage period and the owner has already paid to have any of the "Covered Fuel Tank Components" repaired or replaced for a warrantable condition, the owner may be eligible to receive reimbursement under this warranty extension. Reimbursement for previous replacement costs may be obtained by presenting adequate documentation of those expenses to an authorized Mercedes-Benz dealer. All requests for reimbursement are subject to review and approval by MBUSA. Reimbursement may be limited to the amount the repair would have cost if completed by an authorized Mercedes-Benz dealer.

Id.

### J.   NHTSA Closes 2012 Investigation

On December 19, 2014, NHTSA closed the 2012 Investigation. NHTSA Office of Defects Investigation Closing Resume dated December 19, 2014 [Doc. 158-6]. The NHTSA investigation concluded that there were three identified leak sources unrelated to the issue with the filter modules identified in the 2008 Recall: (1) "the On-Board Diagnostic fuel tank pressure sensor (located on top of the fuel

filter/sender)," (2) "the outlet of the centrally mounted fuel tank fuel filling limiter valve," and (3) "the top of the fuel pump." Id. NHTSA noted that these areas of leakage are all located at the top of the fuel tank in unpressurized parts of the fuel system, and that "[w]hen the tank is full, fuel can slowly weep/seep from micro-cracks in these components and may collect in cavities on top of the filter/sender, pump, or tank." Id. NHTSA investigated complaints indicating that fuel entered the inside of vehicles under the rear seat bench, but concluded that there was no "plausible way for this to occur." Id. NHTSA noted MBUSA's warranty extension related to the fuel tank components of the E-Class vehicles and concluded "[the NHTSA Office of Defects investigation] is closing this investigation based on the manufacturer's extend [sic] warranty of the affected fuel system components and in consideration that the nature of the leaks does not appear to present an unreasonable risk to motor vehicle safety." Id.

## II.   PROCEDURAL BACKGROUND

On July 18, 2012, three Plaintiffs (McCabe, Stone, and Vo) from three states (Georgia, Texas, and Virginia) filed their original complaint. Class Action Compl. [Doc. 1]. On August 28, 2012, five additional Plaintiffs joined and filed their first amended complaint [Doc. 13], which included the following thirteen counts from the eight plaintiffs (McCabe, Herring, Stone, Deuel, Vo, Mattadeen, Cunningham,

13

and Mediana) hailing from six different states (Georgia, Texas, Virginia, Florida,

Illinois, and California):

- Count 1 – Violation of the Magnuson-Moss Act – Express Warranty (Plaintiffs Vo, Herring, Mattadeen, Cunningham, and Mediana);
- Count 2 – Violation of the Magnuson-Moss Act – Implied Warranty (Plaintiffs Vo, Herring, Mattadeen, Cunningham, and Mediana);
- Count 3 – Breach of Express Warranty (Plaintiffs Vo, Herring, Mattadeen, Cunningham, and Mediana);
- Count 4 – Breach of Implied Warranty of Merchantability (Plaintiffs Vo, Herring, Mattadeen, Cunningham, and Mediana);
- Count 5 – Breach of Implied Covenant of Good Faith and Fair Dealing (Plaintiffs Vo, Herring, Mattadeen, Cunningham, and Mediana);
- Count 6 – Violation of the Texas Deceptive Trade Practices Act (Plaintiffs Stone and Deuel);
- Count 7 – Violation of the Virginia Consumer Protection Act (Plaintiff Vo);
- Count 8 – Violation of the Florida Deceptive and Unfair Trade Practices Act (Plaintiff Mattadeen);
- Count 9 – Violation of the Illinois Uniform Deceptive Trade Practices Act (Plaintiff Cunningham);
- Count 10 – Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Plaintiff Cunningham);
- Count 11 – Violation of the California Unfair Competition Law (Plaintiff Mediana);
- Count 12 – Unjust Enrichment (Plaintiffs McCabe, Vo, Deuel, Herring, and Mediana);
- Count 13 – Fraudulent Concealment (all Plaintiffs).

Defendants filed motions to dismiss Plaintiffs' claims [Docs. 16 & 31] on

September 24, 2012, and November 7, 2012, respectively.  In response to the

motions to dismiss, Plaintiffs withdrew their claim under Florida Deceptive and

Unfair Trade Practices Act (Count 8), claims under the Texas Deceptive Trade Practices Act (Count 6), and Plaintiffs Herring and Mediana withdrew their unjust enrichment claims. Pls.' Resp. in Opp'n to MBUSA's Mot. to Dismiss [Doc. 21] at 22, n. 13, 34, n.15. The Court entered an Order on June 7, 2013 [Doc. 46] ("June 7 Order"), granting in part and denying in part the motions to dismiss as follows:

### A.    Claims for Express Warranty (Count 3)

Defendants argued, *inter alia*, that Plaintiffs' express warranty claims failed because Plaintiffs did not present their cars within the relevant warranty periods. Plaintiffs conceded this point, but argued that the time and mileage limitations in the new vehicle limited warranties were unconscionable because Defendants knew or should have known that the fuel systems were defective. The Court found that Defendants' mere knowledge that a part will fail, or even that it is defective at the time of sale, is alone not sufficient to render the time and mileage limitations unconscionable as a matter of law. See June 7 Order at 12-20. The Court quoted at length from a Second Circuit case:

> [V]irtually all product failures discovered in automobiles after expiration of the warranty can be attributed to a "latent defect" that existed at the time of sale or during the term of the warranty. All parts will wear out sooner or later and thus have a limited effective life. Manufacturers always have knowledge regarding the effective life of particular parts and the likelihood of their failing within a particular

> period of time.  Such knowledge is easily demonstrated by the fact
> that manufacturers must predict rates of failure of particular parts in
> order to price warranties and thus can always be said to "know" that
> many parts will fail after the warranty period has expired.  A rule that
> would make failure of a part actionable based on such "knowledge"
> would render meaningless time/mileage limitations in warranty
> coverage.

Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 250 (2d Cir. 1986).  This

Court found that Plaintiffs did not allege any facts that would otherwise render the

time and mileage limitations unconscionable as a matter of law.  Consequently, the

Court dismissed the claims for breach of express warranty (Count 3) of Plaintiffs

Vo, Herring, Mattadeen, Cunningham, and Mediana.  June 7 Order at 18.

**B.    Claims for Implied Warranty of Merchantability (Count 4)**

Defendants argued that Plaintiffs' claims for implied warranty of

merchantability failed, among other reasons, because Plaintiffs failed to present

their vehicles within the warranty periods.  As with the express warranty claims,

Plaintiffs argued that the time and mileage limitations in the new vehicle limited

warranties were unconscionable because Defendants knew or should have known

the fuel systems were defective.  The Court agreed with Defendants and found that

Plaintiffs did not allege sufficient facts to show that the time and mileage

limitations in the new vehicle limited warranties were unconscionable.

Accordingly, the Court dismissed the claims for breach of implied warranty of

merchantability (Count 4) of Plaintiffs Vo, Herring, Mattadeen, Cunningham, and Mediana.  June 7 Order at 22.

### C.    Magnuson-Moss Act Claims (Counts 1 and 2)

The Court noted that the Magnuson-Moss Act did not provide a private cause of action and dismissed the Magnuson-Moss Act claims (Counts 1 and 2) of Plaintiffs Vo, Herring, Mattadeen, Cunningham, and Mediana because these same Plaintiffs failed to state claims for breach of warranty based on state law.  June 7 Order at 29.

### D.    Implied Covenant of Good Faith and Fair Dealing (Count 5)

The Court dismissed the claims for the breach of the implied covenant of good faith and fair dealing of Plaintiffs Vo, Herring, Mattadeen, Cunningham, and Mediana because, *inter alia*, the state laws of Georgia, Florida, Virginia and California hold that this claim is valid only in relation to the performance of a contractual obligation, and Plaintiffs failed to identify any provision in their new vehicle limited warranties that imposed a duty upon Defendants to deliver vehicles free from any defects.  June 7 Order at 32.  The Court dismissed the implied covenant of good faith and fair dealing claim of Plaintiff Cunningham because Illinois does not recognize this as an independent cause of action outside the context of cases involving an insurer's obligation to settle with and insurer.  June 7

Order at 30.  Accordingly, the Court dismissed the claims for breach of the implied

covenant of good faith and fair dealing (Count 5) of Plaintiffs Vo, Herring,

Mattadeen, Cunningham, and Mediana.  June 7 Order at 30-33.

### E.    Statutory Claims

#### 1.    Virginia Consumer Protection Act (Count 7)

The Court denied the Defendants' motions to dismiss with regard to the

Virginia Consumer Protection Act, finding that Plaintiff Vo pled the common law

elements of fraud with sufficient particularity and that he adequately pled a claim

for relief under three of the subsections of the Virginia Consumer Protection Act.

June 7 Order at 52.

#### 2.    Illinois Uniform Deceptive Trade Practices Act and Consumer Fraud and Deceptive Business Practices Act (Counts 9 and 10)

The Court found that Plaintiff Cunningham's claims under the Illinois

Uniform Deceptive Trade Practices Act and the Illinois Consumer Fraud And

Deceptive Business Practices Act failed as a matter of law because they were time-

barred, and she failed to allege that Defendants knew of any alleged defects before

she bought her vehicle in 2003.  June 7 Order at 53-55.  Accordingly, the Court

dismissed Plaintiff Cunningham's claims (Counts 9 and 10) pursuant to those acts.

Id.

### 3.    California Unfair Competition Law (Count 11)

The Court denied Defendants' motions to dismiss Plaintiff Mediana's claim

pursuant to the California Unfair Competition Law, finding that she sufficiently

alleged that she was deceived by Defendants' failure to disclose the alleged defect

in the vehicle she purchased, and she would not have purchased the vehicle

otherwise.  June 7 Order at 55-56.

### F.    Unjust Enrichment (Count 12)

Plaintiffs McCabe, Vo, and Deuel based their unjust enrichment claims on

the theory that Defendants were obligated to cover the cost of the repairs of their

vehicles under the Motor Vehicle Safety Act ("MVSA") and that Defendants were

unjustly enriched when Defendants failed to pay for the repairs and instead made

Plaintiffs pay.  The Court found that, although they were not couched as such,

these claims were essentially claims to enforce the MVSA and, recognizing that

there is no private right of action under the MVSA, the Court dismissed these

claims.  June 7 Order at 33-36.

### G.    Fraudulent Concealment (Count 13)

Defendants moved to dismiss Plaintiffs' claims for fraudulent concealment

on two grounds: (1) Plaintiffs failed to plead fraud with particularity as required by

Federal Rule of Civil Procedure 9(b), and (2) Plaintiffs failed to plausibly allege

that Defendants had a duty to disclose the alleged defect to Plaintiffs. The Court rejected Defendants' first argument, finding that Plaintiffs pled the circumstances of the alleged fraud with sufficient particularity. June 7 Order at 37-39.

The Court then turned to the duty question, which is of particular relevance to the present Motion for Summary Judgment. The Court recognized that the failure to disclose a material fact will support a cause of action for fraud in each of the six states represented by Plaintiffs only if Defendants had a duty to disclose the alleged defect to Plaintiffs. The parties did not dispute that there was no fiduciary or confidential relationship that would give rise to Defendants' duty to disclose information about the alleged defects to Plaintiffs, but Plaintiffs argued that special circumstances existed with regard to each Plaintiffs' fraudulent concealment claims that gave rise to a duty to disclose outside the context of a fiduciary or confidential relationship. The Court then proceeded to analyze the motions to dismiss the fraudulent concealment claims under the respective state laws.

### 1.    Fraud by Concealment Under Georgia Law

The Court recognized that a duty to communicate a material fact may arise "from the particular circumstances of the case" outside of the context of a fiduciary or confidential relationship. June 7 Order at 40-41 (citing O.C.G.A. § 23-2-53). In the context of Defendants' motions to dismiss (accepting all of Plaintiffs' well-pled

20

allegations as true and construing them in a light most favorable to Plaintiffs), the Court found that Plaintiffs had plausibly alleged each of the elements of fraudulent concealment, including that Defendants had a duty to disclose the alleged defects regarding the gasoline tanks to Plaintiffs McCabe and Herring at the time they purchased their vehicles. Id. at 41.

The present order considers below whether the facts and circumstances that have been elicited in discovery present a situation in which Defendants' duty to communicate information regarding the alleged defect arose as a matter of law at the time McCabe and Herring purchased their vehicles.

### 2. Fraud by Concealment Under Texas Law

Similarly, the Court's prior ruling recognized that "the particular circumstances" of some cases give rise to a duty to disclose a material fact outside the context of a fiduciary or confidential relationship. Id. at 43. The Court went on to find that, accepting all of Plaintiffs' well-pled allegations as true and construing them in a light most favorable to Plaintiffs in the context of the motions to dismiss, Plaintiffs plausibly alleged each of the elements of fraudulent concealment under Texas law. Id. at 42-45.

The question for this Court in considering Defendants' Motion for Summary Judgment is whether the evidence of "particular circumstances" elicited in

21

discovery is legally and factually sufficient to give rise to a duty to disclose on the part of Defendants under Texas law.

### 3.    Fraud by Concealment Under Virginia Law

The Court found that Plaintiffs had pled sufficient plausible facts to overcome Defendants' motions to dismiss. Id. at 45-46.  The question presently before this Court and discussed below is whether the evidence, viewed in a light most favorable to Plaintiffs, demonstrates that Defendants owed Plaintiffs a duty to disclose information regarding the alleged defects as a matter of Virginia law.

### 4.    Fraud by Concealment under Florida Law

The Court found that Plaintiff Mattadeen alleged that he bought his vehicle in 2004, four years before Plaintiffs allege that Defendants were aware of the alleged defect in 2008.  As such, the Court dismissed Plaintiffs' claims of fraudulent concealment under Florida law. Id. at 46-47.

### 5.    Fraud by Concealment under Illinois Law

Similarly, Plaintiff Cunningham alleged she bought her vehicle in 2003, five years before Plaintiffs allege that Defendants were aware of the alleged defect in 2008.  As such, the Court dismissed Plaintiff Cunningham's claims of fraudulent concealment under Illinois law. Id. at 48-49.

### 6.   Fraud by Concealment under California Law

Because Plaintiff Mediana plausibly alleged Defendants' failure to disclose

the alleged defect at the time she purchased her vehicle in October 2008 as well as

all of the elements of fraud under California law, the Court denied Defendants'

motion to dismiss Mediana's fraud claim.  Id. at 49-51.

### H.   Remaining Claims After June 7 Order

In sum, after the June 7 Order, the only claims that remained were (1) the

fraudulent concealment claims of Plaintiffs McCabe, Herring, Stone, Deuel, Vo,

and Mediana, (2) Plaintiff Vo's claim for a violation of the Virginia Consumer

Protection Act, and (3) Plaintiff Mediana's claim under California Unfair

Competition Law.

On August 29, 2013, Plaintiffs filed their second amended complaint[2]

reflecting the Court's ruling in the June 7 Order.  Second Am. Compl. [Doc. 63].

In addition to eliminating the claims dismissed by the June 7 Order, the second

amended complaint dismissed Plaintiffs Mattadeen, Cunningham, and Mediana

from the case.  Id.  Plaintiff Deuel's claims were dismissed by Order dated January

7, 2015 [Doc. 157].

---

[2] The Second Amended Complaint is the operative pleading for purposes of
Defendants' present motion for summary judgment.

## III.   LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).   A party seeking summary judgment has the burden of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).   "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions," and cannot be made by the district court in considering whether to grant summary judgment.   Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); see also Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999).

If a movant meets its burden, the party opposing summary judgment must present evidence that shows there is a genuine issue of material fact or that the movant is not entitled to judgment as a matter of law. Celotex, 477 U.S. at 324.   In determining whether a genuine issue of material fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, "and all justifiable inferences are to be drawn" in favor of that opposing party. Anderson, 477 U.S. at 255; see also Herzog v. Castle

Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999). A fact is "material" only if it can affect the outcome of the lawsuit under the governing legal principles. Anderson, 477 U.S. at 248. A factual dispute is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Id.

"If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment for the moving party is proper. Matsushita, 475 U.S. at 587.

## IV.   ANALYSIS

Plaintiffs' Amended Complaint includes a claim for common-law fraudulent concealment under the laws of the respective states of Georgia (McCabe and Herring), Texas (Stone), and Virginia (Vo), as well as a claim for the violation of the Virginia Consumer Protection Act (Vo).

Defendants contend that they are entitled to judgment as a matter of law on all of these claims because, *inter alia*, Plaintiffs have failed to present facts that would give rise to a duty on the part of Defendants to disclose any alleged defect to Plaintiffs. Defendants also argue that none of the Plaintiffs' alleged harm was proximately caused by any failure on their part to inform Plaintiffs about any

alleged defect.  Defendants make a number of additional arguments particular to certain Plaintiffs.  The Court will analyze Defendants' arguments as applied to each of the Plaintiffs under the laws of their respective states *seriatim*.

### A.    Georgia Plaintiffs

Defendants argue that they are entitled to judgment as a matter of law as to the Georgia Plaintiffs' sole remaining claim for fraudulent concealment. Defendants argue that: (1) there was no duty to disclose any information regarding any alleged defect to either McCabe or Herring before they purchased their vehicles; (2) the alleged failure to disclose any information regarding any alleged defect was not the proximate cause of any harm suffered by either McCabe or Herring; (3) neither McCabe nor Herring justifiably relied on any failure on the part of Defendants to inform them about any alleged defect in their vehicles; (4) there is no evidence that Defendants intended to deceive McCabe; (5) Herring's fraudulent concealment claim fails as matter of law because it is essentially an improper "duty to recall" claim; and (6) there is no evidence of a design defect to support Herring's fraudulent concealment claim.

Under Georgia law, the tort of fraud has five elements: (1) a false representation or omission of a material fact; (2) scienter; (3) intention to induce the party claiming fraud to act or refrain from acting; (4) justifiable reliance; and

(5) damages as the proximate result of defendant's action.  Botes v. Weintraub, No.

1:08-CV-01341-CAM, 2010 WL 966864, at *4 (N.D. Ga. Mar. 12, 2010) (citing

Parrish v. Jackson W. Jones P.C., 278 Ga. App. 645 (2006)).  However, in a

fraudulent concealment action, there must first exist a duty to communicate the

omitted or concealed material fact to the defrauded party.  GE Life & Annuity

Assurance Co. v. Barbour, 191 F. Supp. 2d 1375, 1383 (M.D. Ga. 2002) ("An

obligation to disclose must exist before a party may be held liable for fraud based

upon the concealment of material facts.") (citing Williams v. Dresser Indus., 120

F.3d 1163, 1167 (11th Cir. 1997)).  This duty to communicate "may arise from the

confidential relations of the parties or from the particular circumstances of the

case."  O.C.G.A. § 23-2-53.

Both Georgia Plaintiffs purchased their vehicles in used condition but under

different circumstances:  McCabe purchased his automobile from a third party

unaffiliated with Defendants but Herring purchased her automobile from a

Mercedes-Benz dealership.  Defendants contend that they had no duty to disclose

to either Plaintiff the alleged defect concerning the gasoline leak in the fuel tank.

Plaintiffs respond that the duty to disclose arises from the particular circumstances

of this case and assert that the Court, in its Order denying in part Defendants'

motion to dismiss, already upheld this theory based upon the Georgia Court of

Appeals' decision in Rivers v. BMW of N. Am., Inc., 214 Ga. App. 880, 883-84

(1994). Pls.' Opp'n to Defs.' Mot. for Summ. J. [Doc. 146] ("Pls.' Opp'n") at 22-

23, 30 (citing June 7 Order at 40-41). Defendants, on the other hand, contend that

the Court's earlier ruling on the motion to dismiss has no impact upon the

consideration of their motion for summary judgment, where the existence of a duty

to disclose must be measured by the specific facts of the case. Defs.' Reply Br. in

Supp. of Omnibus Mot. for Summ. J. [Doc. 159] at 4-5.

　　　In Rivers, the defendants made affirmative representations that the vehicle

sold to plaintiff was a brand new vehicle. Id. at 880-81. When the vehicle arrived

in the United States, its exterior paint and finish had been damaged by acid rain

and the affected surfaces were then refinished according to specifications by BMW

technicians before the car was shipped to the dealership. Id. at 881. In the sales

agreement for the purchase of the vehicle, the plaintiff acknowledged in a

disclaimer that there may have been certain transit and storage damage to the

vehicle sold by the dealership and released the dealer from any such claims. Id. at

882. The trial court granted the distributor's and dealership's motion for summary

judgment, concluding: (1) that there was no fraudulent misrepresentation as a

matter of law because the disclaimer in the sales agreement disclosed the potential

for damage to the vehicle in transit, and (2) plaintiff failed to exercise due

diligence in ascertaining the alleged falsity in the description of the car as "new." Id. at 881.

The Georgia Court of Appeals reversed, finding (1) that it was error for the trial court to conclude that the "disclaimer in this sales contract was sufficient disclosure of the acid rain damage actually sustained and actually repaired, as a matter of law," and (2) "[i]t cannot be said that due diligence in buying an automobile would require a prospective purchaser to make such an inspection as possibly would have disclosed this latent damage." Id. at 883-84. Whether or not there was a duty on the part of the defendant manufacturer in Rivers to affirmatively disclose any defects was not an issue in that case.

The actual statement of the law from the Rivers case was as follows: "Concealment of material facts may amount to fraud when direct inquiry is made, and the truth evaded, or where the concealment is of intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover." Id. at 883-84. (internal quotation omitted). The Rivers court went on to hold that the plaintiff could not have been expected to discover the acid rain damage after it had been painted over, especially after the plaintiff inquired about the finish and the defendant denied that it was repainted. Id. at 884. As such, the Rivers court did not establish that there was a duty to disclose outside a

29

confidential relationship based on the "particular circumstances of [that] case."

See O.C.G.A. § 23-2-53.  The Rivers court never considered the duty issue nor

mentioned O.C.G.A. § 23-2-53.[3]

Plaintiffs have failed to cite to a single case in which a court has applied

Georgia law to find a duty to disclose outside of a confidential or special

relationship in facts similar to this case, where there is no evidence that Defendants

had direct knowledge of Plaintiffs' purchases of the vehicles in question and had

no apparent relationship with Plaintiffs.  See O.C.G.A. § 23-2-53.  The cases in

which courts have invoked the "particular circumstances" language of O.C.G.A.

§ 23-2-53 to find a duty to disclose outside of the confidential relationship context

have involved at least some relationship between the parties.  See Mitchell v. Ford

Motor Credit Co., 68 F. Supp. 2d 1315, 1320 (N.D. Ga. 1998) ("Those cases where

Georgia courts have found particular circumstances giving rise to a duty to disclose

involve dependent relationships sufficient to overcome the will of a party.");

Moore v. Meeks, 225 Ga. App. 287, 287 (1997) (affirming the grant of summary

---

[3] To the extent Plaintiffs are relying on this Court's Order denying Defendants'
motions to dismiss as being dispositive of the issue of whether Defendants owed a
duty to disclose as presented in the present motion for summary judgment,
Plaintiffs' argument is unavailing.  See Williams, 120 F.3d at 1171 (finding the
trial court's denial of a motion to dismiss based on the pleading of facts viewed in
a light most favorable to plaintiff was not dispositive of the trial court's later ruling
on the motion for judgment notwithstanding the verdict).

judgment to defendant home builder on claim of concealment of latent defects in home that plaintiff bought from original owner: "As [home builder] was not a party to the contract [between plaintiff and original owner] and [plaintiff] does not allege that [home builder] had any knowledge of the sale, he cannot claim [home builder] was under a duty to disclose to him the defect. The cases cited by [plaintiff] in support of this claim are inapposite as they all involve the duty of a builder-seller who was a party to the contract.").

The cases finding a duty to disclose under the "particular circumstances" prong of O.C.G.A. § 23-2-53 involved some sort of a relationship between the parties and there is no evidence of that before this Court. Although Herring bought her vehicle from a Mercedes-Benz dealer and McCabe took his vehicle to a Mercedes-Benz dealer for an inspection prior to purchasing the vehicle, there is no evidence (nor even an allegation) that either dealer were agents of Defendants. In order to find some relationship between Defendants and these Plaintiffs, the Court would have to assume some element of agency between Defendants and the Mercedes-Benz dealerships with whom Herring and McCabe interacted, and there is simply no evidence in the record to support this. See Lauria v. Ford Motor Co., 169 Ga. App. 203, 205 (1983) (finding that the agreement between the automobile manufacturer and dealer defined presence or absence of an agency relationship,

31

and that there was not otherwise any evidence showing a *de facto* principal/agent

relationship); GM Corp. v. Jenkins, 114 Ga. App. 873, 877-78 (1966) (reversing

the trial court's denial of the defendant manufacturer's general demurrer to the tort

action when there was no evidence of the contract forming the agency relationship

between the automobile manufacturer and dealership: "it is obvious that the

determination of whether the relationship between the manufacturer and dealer is

that of principal and agent or that of independent contractors must be determined

from the written instrument, and it would be useless to make a determination based

on the incomplete allegations of the petition where the instrument, when before the

court, might demand a contrary conclusion.").

Plaintiffs have not cited, nor has this Court found, one case in Georgia where

a claim for fraudulent concealment similar to the one brought by Plaintiffs was

sustained when the vehicle was used and purchased subsequent to the expiration of

the warranty period.  Given the absence of any legal precedent supporting

Plaintiffs' contention, the Court is unable to conclude that under Georgia law "the

particular circumstances" of this case warrant the imposition of a duty to disclose

where there was no evidence of any relationship between Defendants and the

Georgia Plaintiffs.  Consequently, because the facts in this case establish as a

matter of law that Defendants owed no duty to disclose to McCabe or Herring the

alleged defect upon their purchases of their used vehicles, Plaintiffs' fraudulent

concealment claims fail as a matter of law and Defendants are entitled to summary

judgment on Count 3 as applied to Herring and McCabe.[4]

### B.   Texas Plaintiff

Under Texas law, the elements of common law fraud are as follows:

> (1) a material misrepresentation was made; (2) the representation was
> false; (3) when the representation was made, the speaker knew it was
> false or made the statement recklessly without any knowledge of the
> truth; (4) the speaker made the representation with the intent that the
> other party should act on it; (5) the party acted in reliance on the
> representation; and (6) the party thereby suffered injury.

Tex. Integrated Conveyor Sys. v. Innovative Conveyor Concepts, 300 S.W.3d 348,

366 (Tex. App. 2009). "Fraud by nondisclosure is a subcategory of fraud." Id.

To prevail on a claim of fraud by nondisclosure under Texas law, a plaintiff

must show that:

> (1) the defendant failed to disclose facts to the plaintiff, (2) the
> defendant had a duty to disclose those facts, (3) the facts were
> material, (4) the defendant knew the plaintiff was ignorant of the facts

---

[4] Even if McCabe could have established a duty to disclose, McCabe is still unable
to satisfy the justifiable reliance element of a claim for fraudulent concealment.
McCabe was provided with service records indicating that his vehicle had issues
regarding the fuel system prior to the purchase of the vehicle and admittedly never
reviewed them. See McCabe Dep. at 39-40. McCabe's lack of due diligence in
discovering the existence of the alleged defect is an additional ground supporting
Defendant's Motion for Summary Judgment as to McCabe's claim for fraudulent
concealment.

and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge.

Horizon Shipbuilding, Inc. v. BLyn II Holding, LLC, 324 S.W.3d 840, 850 (Tex. App. 2010); see also In re Enron Corp. Sec., Derivative "ERISA" Litig., No. H-01-3624, 2010 WL 9077875, at *38 (S.D. Tex. Jan. 19, 2010) (quoting Bradford v. Vento, 48 S.W.3d 749, 754-55 (Tex. 2001)).

"As an essential element of a claim of fraud based on nondisclosure, the defendant must have a duty to disclose." Id., 2010 WL 9077875, at *38; see also Bradford, 48 S.W.3d at 755 ("As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information."). "Thus, silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." Bradford, 48 S.W.3d at 755. "Whether such a duty exists is entirely a question of law." Hoggett v. Brown, 971 S.W.2d 472, 487 (Tex. App. 1997) (citation and quotation omitted).

> A duly to disclose may arise in four situations: (1) when there is a fiduciary relationship; (2) when one voluntarily discloses information, the whole truth must be disclosed; (3) when one makes a representation, new information must be disclosed when the new information makes the earlier misrepresentation misleading or untrue;

34

and (4) when one makes a partial disclosure and conveys a false impression.

Id., 971 S.W.2d at 487; see also In re Enron Corp., 2010 WL 9077875, at *38.

There is no evidence before this Court that any of the four circumstances exist that would give rise to a duty to disclose on behalf of Defendants to Stone. First, there was no fiduciary relationship between Stone and Defendants because the vehicle was purchased from a private seller unaffiliated with Defendants. Second, there is no evidence of any disclosure of information or the making of a representation by Defendants directly to Stone concerning the vehicle prior to that purchase. Finally, there is no evidence of a partial disclosure made by Defendants prior to the transaction that created a false impression leading to the sale. Consequently, there appears to have been no duty to disclose and Stone has not cited to any Texas case where such a duty was found to exist for an automobile distributor or dealer arising out of a private sale of a vehicle. See Nissan Motor Co. v. Armstrong, 145 S.W.3d 131, 149 (Tex. 2004) (affirming the dismissal of fraud claim against the upstream manufacturer of the car where plaintiff "obtained her car from her parents six years after they bought it from [defendant]; [defendant] had no involvement or pecuniary interest in the transaction. There was no evidence of any specific warranty or representation [defendant] ever made to [plaintiff], and no duty to disclose either.").

35

Plaintiffs cite Hidden Values, Inc. v. Wade, No. 3:11-CV-1917-L, 2012 WL 1836087, at *9 (N.D. Tex. May 18, 2012), for the proposition that "under Texas law, a duty to disclose can exist absent a fiduciary relationship when a party does not have an equal opportunity to discover material information withheld." Pls.' Opp'n at 24, n.13. Hidden Values discusses an "unresolved confusion" as to whether a general duty of disclosure in Texas is limited to a confidential or fiduciary relationship. 2012 WL 1836087, at *8 (citing United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co., 414 F.3d 558, 566 (5th Cir. 2005)). The district court in Hidden Values agreed with two Southern District of Texas decisions that interpreted the Supreme Court of Texas' decision in Bradford v. Vento, as "not foreclos[ing] the existence of a duty to disclose absent a confidential or fiduciary relationship" when a party does not have an equal opportunity to discover withheld information. Id. at *9. Regardless of the "confusion" in some of the Texas decisions, this Court finds that neither Bradford nor Hidden Values supports a determination that a duty to disclose existed in this case. Both Hidden Values and Bradford involved arm's length business transactions between the parties in which affirmative representations were made but other material information was not disclosed. On the other hand, there was no

arms length transaction between Stone and Defendants – Stone purchased his car from a third-party seller.

As a matter of law, because Defendants had no duty to disclose the alleged defect to Stone, Defendants are entitled to judgment as a matter of law on Stone's Fraudulent Concealment claim (Count 3).[5]

---

[5] Even if Stone was able to establish a duty to disclose, he would have been unable to satisfy several other elements of fraud under Texas law. First, Stone has failed to show that "the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation." Exxon Corp. v. Emerald Oil & Gas Co., 348 S.W.3d 194, 217 (Tex. 2011). The "mere fact that subsequent [purchasers of E-Class vehicles] might or should rely on [Defendants' fraudulent omissions] alone is not sufficient to establish an intent to induce reliance." Id. at 218. Consequently, the Court finds that Stone's failure to present evidence of Defendant's intent to deceive is an additional ground to find for Defendants as a matter of law on Stone's claim for fraudulent concealment. Second, Stone failed to respond to Defendants' argument that he cannot show that Defendants knew he was "ignorant of the true facts" and did not have "an equal opportunity to discover the truth." Defs.' Br. at 12-13 (citing Coldwell Banker Whiteside Assocs. v. Ryan Equity Partners, Ltd., 181 S.W.3d 879, 888 (Tex. App. 2006) ("The duty to disclose arises when one party knows that the other party is ignorant of the true facts and does not have an equal opportunity to discover the truth.")). Therefore, Stone has is deemed to have abandoned any defense to such argument. Kramer v. Gwinnett Cty., 306 F. Supp. 2d 1219, 1221 (N.D. Ga. 2004) ("a party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed"). Consequently, the Court finds that this is an additional ground to find for Defendants as a matter of law on Stone's claim for fraud by nondisclosure. Finally, the Court finds that there is no evidence that Stone suffered any damage as a result of Defendants' failure to disclose information about the alleged defect to his vehicle. See Stone Dep. at 25, 64-65 (Stone admitted buying the warranty before he was aware of the fuel tank issue).

### C.    Virginia Plaintiff

#### 1.    Fraud by Concealment

In Virginia, "[a] plaintiff asserting a claim of actual fraud must demonstrate (1) a false representation by the defendant, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the misled party, and (6) resulting injury to the party misled." Carlucci v. Han, 907 F. Supp. 2d 709, 740 (E.D. Va. 2012); see also Winn v. Aleda Constr. Co., 227 Va. 304, 308 (1984).  Further, "a concealment or omission of a material fact may also give rise to a claim of actual fraud." Carlucci, 907 F. Supp. 2d at 740.  "Fraud by concealment requires actual intent to conceal a fact and reckless non-disclosure is not actionable." White v. Potocska, 589 F. Supp. 2d 631, 642 (E.D. Va. 2008) (citation omitted).  "Although silence does not constitute fraud in the absence of a duty to disclose, a duty to disclose may arise where concealment of a material fact by one who knows that the other party is acting upon the assumption that the fact does not exist constitutes actionable fraud." Carlucci, 907 F. Supp. 2d at 740 (citation and quotation omitted); see also Bank of Montreal v. Signet Bank, 193 F.3d 818, 829 (4th Cir. 1999) ("[T]he failure to disclose information is generally not actionable as fraudulent concealment in the absence of some duty to disclose.") (citing Norris v. Mitchell, 255 Va. 235, 240 (1998)).

38

> A duty to disclose does not normally arise when parties are engaged in an arm's length transaction. A duty [to disclose] may arise (1) if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist; or (2) if one party takes actions which divert the other party from making prudent investigations (e.g., by making a partial disclosure).

Bank of Montreal, 193 F.3d at 829 (internal citations omitted) (holding that there was sufficient evidence for a jury to find that the defendant had a duty to disclose information to the plaintiff related to the underlying transaction between the two parties).

Plaintiffs cite five cases in support of their position that Defendants' failure to disclose the alleged defect to Plaintiffs defeats Defendants' Motion for Summary Judgment under Virginia law: Hirschberg v. G. W Motors, Inc., 34 Va. Cir. 55, 60 (1994); Norris v. Mitchell, 255 Va. 235 (1998); Van Deusen v. Snead, 247 Va. 324, 328 (1994); Spence v. Griffin, 372 S.E.2d 595 (1988); Alexander v. Se. Wholesale Corp., 978 F. Supp. 2d 615 (E.D. Va. 2013). See Pls.' Opp'n at 22-30, 34-38. As is explained below, the Court finds that none of the cases cited by Plaintiffs establish that Virginia law imposes a duty on a remote seller, such as Defendants in this case, to disclose information to Plaintiffs under the facts of this case.

39

  
Hirschberg involved a case in which a car dealer sold a car to the plaintiff

and represented to the plaintiff at the time of sale that it was a "new car" when, in

fact, it had been vandalized and repaired by the defendant prior to the sale.

Hirschberg, 34 Va. Cir. at 56.  The defendant dealership moved for summary

judgment, arguing that in Virginia, fraud was actionable only if it was an

intentional, express verbalization of a falsehood.  The trial court rejected this

notion, holding that "[t]he duty of a party to reveal material facts of which he has

knowledge depends upon the circumstances of each case and the relationship

between the parties."  Id. at 57 (citing 37 Am. Jur. 2d, Fraud and Deceit, § 146).

The Hirschberg court quoted American Jurisprudence at length to establish there

was a duty to disclose to support the fraud by concealment claim in that case

involving litigants who were parties to the transaction underlying the lawsuit, and

in privity of contract.  Id. at 57-58 (citing 37 Am. Jur. 2d, Fraud and Deceit, §

146).  The Hirschberg court concluded that the circumstances of that case, where

the litigants were parties to the underlying transaction, were such that the

defendant "had superior knowledge about the prior damage or was required to

speak to correct Plaintiff's mistaken belief about the vehicle's condition," which

triggered its duty to disclose prior damage.  Id. at 59.  By contrast, Defendants in

this case were not in any underlying transaction with Plaintiff Vo.

Norris involved the sale of a house wherein the plaintiffs alleged that the defendants committed fraud by failing to disclose information in a work permit related to repair work the defendant seller performed on the house at the request of the plaintiff buyers prior to the sale. Norris, 255 Va. at 237-38. The information would have revealed that the septic system would only tolerate a limited use of the wastewater system in the house. Id. The Supreme Court of Virginia acknowledged that "[a] contracting party's willful nondisclosure of material fact that he knows is unknown to the other party may evidence an intent to practice actual fraud," but found that there was no duty on the part of defendants where the information in the construction permit was a matter of public record and available to plaintiffs. Id. at 241 (quoting Van Deusen, 247 Va. at 328 (emphasis added)). Unlike the litigants in the Norris litigation, Plaintiffs Vo and Defendants were not parties to any underlying transactions in this case.

Van Deusen is another case involving the sale of a home where the litigants were the buyers and sellers of property in question. Van Deusen, 247 Va. at 326. In that case, a prior inspection of the residence at issue revealed some foundation settlement and other issues that the sellers attempted to disguise and hide from the plaintiff purchasers. Id. at 327. The Virginia Supreme Court confirmed that "[a] contracting party's willful nondisclosure of a material fact that he knows is

41

unknown to the other party may evince an intent to practice actual fraud." Id. at

328 (quoting Spence, 236 Va. at 28) (emphasis added).  Based on this statement of

the law, the Van Deusen court reversed the trial court's dismissal of the fraud

claim against the seller defendants: "an allegation of concealment by conduct is

equivalent to an allegation of a verbal misrepresentation of a material fact, made

intentionally to mislead prospective purchasers and to divert them from making the

inquiries and examination which a prudent man ought to make." Id. at 329

(citation and quotation omitted).  Like Hirschberg and Norris, discussed above, the

litigants in the Van Deusen case were in privity of contract, unlike the parties in

this case.

　　　Spence v. Griffin is the last in the line of cases relied upon by Plaintiffs

wherein a Virginia court recognized the tort of fraud by concealment.  As with the

previous three, this case involved litigants who were parties to the underlying

transaction.  In Spence, the plaintiff alleged that the defendants fraudulently

induced her into conveying land to them in a manner that was against her

expressed interest. Spence, 236 Va. at 23-27.  Consistent with Hirschberg, Norris,

and Van Deusen, the Virginia Supreme Court stated that "**[a] contracting party's**

willful nondisclosure of a material fact that he knows is unknown to the other party

may evince an intent to practice actual fraud." Id. at 28 (emphasis added).  The

42

Spence court affirmed the trial court's judgment in favor of the plaintiff on the

fraud by concealment claim:

> We are of opinion that good faith dealing required the Spences to
> correct Mrs. Griffin's mistake by disclosing the true contents and
> effect of the deed before she signed it and that their nondisclosure was
> the equivalent of a fraudulent assertion of a material fact, knowingly
> made with intent to mislead.

Id. at 29. As with the other cases relied upon by Plaintiffs, this fraud by

concealment claim found a duty to disclose where the litigants had an underlying

contractual relationship.

Alexander v. Se. Wholesale Corp., 978 F. Supp. 2d 615 (E.D. Va. 2013), is

the lone case cited by Plaintiffs in which a theory of fraud was applied to a remote

seller who was not in privity of contract with the plaintiff. In that case, defendant

Adams sold a vehicle to another defendant, Southeastern Wholesale Corp.

("Southeastern") and, as a part of that initial transaction, Adams certified the

odometer reading (29,580 miles) as being correct to the best of his knowledge. Id.

at 616. Southeastern subsequently sold the vehicle to plaintiff, who discovered

almost two years later that the odometer reading was inaccurate when he tried to

re-sell the vehicle. Id. Among other claims, plaintiff brought a fraud claim against

Adams. Id. at 618. Adams moved to dismiss the fraud claim arguing that there

was no allegation of an affirmative misrepresentation from Adams directly to

43

plaintiff to support his claim for fraud.  Id. at 622-23.  The court denied the motion,

holding that "[i]n Virginia, a claim of fraud does not require direct contact or

privity between the defendant and the plaintiff.  A complaint must merely allege

that the defendant knew or had reason to know that the plaintiff would rely on the

misrepresentation."  Id. at 623 (citing Mortarino v. Consultant Engineering Servs.,

251 Va. 289, 295-96 (1996)).  The Alexander court then cited two other federal

district court cases and a Virginia circuit court case that applied this same rule, first

articulated in Mortarino, to cases with similar fact patterns where remote sellers of

vehicles made affirmative misrepresentations to buyers who ultimately sold the

vehicles to the plaintiffs.  Id.; see also Branin v. TMC Enters., LLC, 832 F. Supp.

2d 646 (W.D. Va. 2011) (denying a motion to dismiss a fraud claim where the

remote seller affirmatively misrepresented the mileage with the knowledge that the

misrepresentation would be repeated to induce a future purchaser into believing the

car had less mileage than it actually did); Eubank v. Ford Motor Credit Co., 54 Va.

Cir. 170 (2000) (permitting the plaintiff to amend the pleadings to make allegations

consistent with other cases in which Virginia courts recognized fraud based on

affirmative misrepresentations of remote sellers of vehicles); Harris v. Universal

Ford, Inc., No. 3:00-cv-693, 2001 U.S. Dist. LEXIS 8913, at *3-4 (E.D. Va. Feb.

5, 2001) (recommending that the district court deny the remote vehicle seller's

44

motion to dismiss where the lawsuit contained allegations that the remote seller affirmatively provided incomplete documentation of damage and subsequent repairs done to the vehicle and representing that it was otherwise in "excellent, cherry condition."). The Alexander court stated that in cases where a plaintiff is asserting a fraud claim against a remote seller, it was sufficient to state a claim under Virginia law if the complaint included allegations that the remote seller knew or had reason to know that the plaintiff would rely on the remote seller's affirmative misrepresentation. Id.

The obvious difference between the case at bar and the line of remote seller cases relied upon by Plaintiffs is that there is no evidence of any affirmative misrepresentation on the part of Defendants in this case. Plaintiffs' fraud claim in this case is based on an omission. As detailed above, a fraud by omission claim carries with it a concomitant showing that the defendant owed the plaintiff a duty to disclose the information, the omission of which forms the basis of the fraud claim. Plaintiffs have presented no law to support the proposition that a defendant has a duty to disclose allegedly omitted information where the remote seller has no contractual relationship with the plaintiff and did not make any affirmative misrepresentation. See Norris, 255 Va. at 241 (affirming the trial court's dismissal

45

of a fraud by omission case where there was no duty on the part of the defendants to provide the information the plaintiffs complained was omitted).

This case is more analogous to Samuels v. Fredericksburg Motorcars, 44 Va. Cir. 98, 99-100 (1997), where the plaintiff brought a fraud by omission claim against a remote seller of the vehicle he owned alleging that the previous owner knew that the vehicle had been wrecked and "should have been branded as salvage, . . ., and that [the remote seller] fraudulently repaired the car and sold it to [a subsequent purchaser], a car dealer, without branding it as a salvage vehicle." The court rejected the plaintiff's fraud by omission theory against the remote seller. The Samuels court reasoned that even if the remote seller failed to comply with the Virginia statutes related to salvage vehicles, the remote seller defendant's conduct in attempting to repair the car and failing to properly label it as salvage "does not give every subsequent purchaser of the car a private fraud action against him." Id. at 100. The court reasoned that the remote seller defendant did not have an obligation (duty) to disclose any information:

> [Plaintiff] constructs an argument that [the remote seller defendant] owed an obligation to the general public, to all potential subsequent owners of the car, to reveal to his immediate transferee the history of the vehicle. It is on that basis, [Plaintiff] concludes, that [the remote seller defendant] defrauded him. The court rejects that argument and holds that [the remote seller defendant] is not answerable in fraud to [Plaintiff] under the circumstances alleged in the pleading.

46

Id. For the same reason, this Court concludes that under Virginia law, there was

no duty for Defendants to disclose any alleged defects to Plaintiff Vo, and holds

that Defendants are entitled to judgment as a matter of law on Plaintiffs'

Fraudulent Concealment claim (Count 3).

### 2.    Virginia Consumer Protection Act

Plaintiff Vo also brings a claim under the Virginia Consumer Protection Act

("VCPA"), Va. Code Ann. § 59.1-200, based on Defendants' failure to disclose the

alleged defect.  Defendants argue that Plaintiff Vo's VCPA claim fails for the same

reasons his fraud claim failed.[6]  The Court agrees.

The VCPA prohibits suppliers of consumer goods from engaging in various

"fraudulent acts or practices," including, *inter alia*, "[m]isrepresenting that goods

or services have certain quantities, characteristics, ingredients, uses, or benefits;

. . . Misrepresenting that goods or services are of a particular standard, quality,

grade, style, or model;" and "[u]sing any other deception, fraud, false pretense,

false promise, or misrepresentation in connection with a consumer

---

[6] Plaintiffs failed to address Defendants' arguments with regard to Vo's VCPA claim in their response to Plaintiff's Motion for Summary Judgment. Consequently, Plaintiffs are deemed to have abandoned any defense to such argument. Kramer, 306 F. Supp. 2d at 1221 (N.D. Ga. 2004) ("a party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense is unopposed"). Nevertheless, the Court will examine the merits of Defendants' argument.

transaction . . . ." Va. Code Ann. §§ 59.1-200(A)(5), (A) (6), (A)(14); <u>see also</u> <u>Ali v. Allergan USA, Inc.</u>, No. 1:12-CV-115 (GBL/TRJ), 2012 WL3692396, at \*19 (E.D. Va. Aug. 23, 2012).

Under the theory of liability pursued by Plaintiff Vo (fraudulent omission) in his VCPA claim, he has to prove the same elements of common-law fraud by omission. <u>Koschene v. Hutchinson</u>, 73 Va. Cir. 103 (2007) ("Common law standards of what constitutes a misrepresentation of fact govern such an inquiry.") (citing <u>Lambert v. Downtown Garage, Inc.</u>, 262 Va. 707, 711 (2001)). As detailed above, a fraud by omission claim is not actionable absent a duty to disclose. <u>Bank of Montreal</u>, 193 F.3d at 829. Without a duty to disclose, Plaintiff Vo's VCPA claim fails as a matter of law.

## V.   CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment [Doc. 110] is **GRANTED**.

**IT IS SO ORDERED** this 20th day of August, 2015.

MARK H. COHEN
United States District Judge